No. 25,357.

B. F. TICE, *Appellee*, v. LELIA CROWDER, *Appellant*.

SYLLABUS BY THE COURT.

1. MOTOR VEHICLES—*Liability for Injury—Vehicle in Charge of Third Person —Presumption of Owner's Liability.* In an action against the owner of an automobile for damages resulting ·from an automobile collision occasioned by the negligent operation of the trespassing car by another than the owner, proof of ownership does not make a *prima facie* case of liability, or raise a presumption of liability, on the part of the owner. Plaintiff must offer evidence that the driver was acting in some capacity for the owner, and within the scope of the employment.

2. SAME—*Liability of Owner—Sufficiency ·of Evidence.* The evidence considered and held to be insufficient to establish liability of the owner of an automobile for its negligent operation by another.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed November 7, 1925. Reversed.

*Benjamin F. Endres* and *Keefe O'Keefe,* both of Leavenworth, for the appellant.

*J. K. Codding,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover damages occasioned by an automobile collision on a street of the city of Leavenworth. Plaintiff recovered, and defendant appeals.

There was ample evidence that the car which struck plaintiff's car was negligently operated, and of injury to plaintiff's person and property. Defendant admitted she owned the trespassing car. Plaintiff testified Arbor Gough was driving the car at the time of the accident and there were no passengers in it. The petition alleged Arbor Gough was defendant's employee, and was engaged in conducting her business. The question is whether there was any substantial evidence to sustain these allegations.

The accident occurred about 9:30 Sunday morning, October 1, 1922. Plaintiff called as a witness J. P. Reavy, who at the time of the accident was a patrol-wagon driver for the city. He testified as follows:

"I saw Arbor driving this car at times before that. I saw people in it, but do not know whether they were passengers or not."

1, 2. Motor Vehicles, 28 Cyc. pp. 46, 47; 46 L. R. A., n. s., 1091; L. R. A. 1918D, 924; 2 R. C. L. 1198 *et seq.*

Reavy's cross-examination, which will be quoted later, must be classified with the evidence for defendant. Defendant presented a demurrer to plaintiff's evidence, which was overruled.

The evidence for defendant may be summarized as follows: Lelia Crowder, a widow, who lives in her own home on Cheyenne street in Leavenworth, is the daughter of Lee Gough, who keeps a restaurant and lives on Shawnee street. Lee Gough has two sons—Arbor, nicknamed "Dickey," and William, nicknamed "Dooley." At the time of the trial in May, 1923, Dickey was not quite sixteen years old and Dooley was twenty-three. The boys lived with their father. The car was a Cadillac sedan, purchased by Lelia Crowder in February or March, 1922, for use as a taxicab. Immediately after it was purchased she turned it over to Dooley, who thereafter had charge of it. He kept it in a garage on Delaware street, operated it, accounted to his sister for its earnings, and received twenty-five per cent commission for his services. She owned two other cars, which were operated as taxicabs by Ray Collins and Will Saunders. Dickey had never been employed by his sister as a taxicab driver and had never used the car for carrying passengers. He had used it to take his mother riding, had taken his girl riding in it, and might go off with it if he found it unlocked, but he had no business with it and had been told to stay out of it. On the morning of October 1 Dooley was in charge of the car. He took it from the garage, drove it to the restaurant, and leaving it at the curb in front, went in for his breakfast. Sometime afterward Reavy and another police officer appeared at the restaurant and inquired of Lee Gough for Dickey. Dickey was not there. The car was standing at the curb, but the bumper was broken, the lamp on the right side was broken, and the right fender was bent. The officers had come from the scene of the accident. Dooley had not been out of the restaurant, and he learned from the officers what had occurred. On cross-examination, Reavy, as a witness for plaintiff, testified as follows:

"When I told Lee Gough that the car had been in a wreck he was surprised. He did not think the car had left there. I told him, 'Here, your bumper is broke,' and I took half of the bumper out of the police car and handed it to him right there in front of his place, and then he was convinced that the car had been moved out of there. I did not see Mrs. Crowder down there. I saw Dooley there (at Lee Gough's restaurant) after the collision. Lee Gough said Dickey had just left. He did not say that Dickey had just drove the car up, but Dooley had just finished his breakfast and the car was sitting there. Lee Gough said, 'Why, he just now left here.' I knew Dickey was the one that

had this car. I talked over that bumper with Lee Gough, and convinced him that the car had actually been moved from the curbstone while Dooley was in eating his breakfast, and he acted like a surprised man at the whole transaction."

Dickey testified he had not been driving the car for his sister, and that, without permission from anybody, he took the car for a pleasure trip to the Soldiers' Home. When he came back he did not tell anyone at the restaurant about the accident, because he knew his father would give him "the devil." His father took him to the police station. On cross-examination Dickey said he had driven his father's Haines touring car as a taxicab "last summer."

In rebuttal plaintiff produced a witness who had seen Dickey driving the car once with his mother in it; two police officers who were familiar with Mrs. Crowder's taxicabs and who testified they had seen Dickey driving the car several times "last summer," "during the summer," "summertime," "summer months," with people in it; and one witness who knew Mrs. Crowder's taxicabs and had seen Dickey driving a car, but he did not know whether it was Mrs. Crowder's blue sedan or Lee Gough's Haines car. No witness for defendant was impeached, and no testimony was produced to dispute any fact testified to by defendant's witnesses, unless the rebuttal testimony raised a question with reference to extent of Dickey's use of the car.

Upon the foregoing evidence the jury returned a verdict for plaintiff for $3,500, and returned the following remarkable special findings of fact:

"Question 4. At the time of said collision, or on said day, was the said Arbor Gough in the employ of said Lelia Gough? A. Yes.

"Question 5. If you answer the last preceding 'Yes,' then state when he was employed by the said Lelia Crowder, and for what purpose. A. Last summer and fall, driving taxi.

"Question 6. If you answer question 4 'Yes,' state what if any business the said Arbor Gough was transacting for Lelia Gough on the day and at the time in question. A. Driving taxi.

"Question 7. Do you find from the evidence that Willie, commonly called 'Dooley' Gough, had charge of the automobile of Lelia Crowder just before Arbor Gough took possession of it and while it was standing at the curb in front of the restaurant of Lee Gough, on the day in question? A. Yes.

"Question 8. Did Arbor Gough take the automobile of Lelia Crowder, the defendant, without her knowledge, to use for his own pleasure or convenience, on the day of the collision, and was Arbor Gough so using said automobile at the time of said collision? A. No.

Tice v. Crowder.

"Question 9. Did Lelia Crowder know that Arbor Gough had taken her said automobile on the day in question, and that said Arbor Gough was in possession of it at the time of said collision?  A. No.

"Question 9½. What, if anything, had Lelia Crowder, the defendant, to do with the operation or control of the Cadillac automobile on the day of the accident and at the time thereof?  A. As owner.

"Question 16. Is it not true that the Cadillac automobile was being used by Arbor Gough in some way not connected with the business of Lelia Crowder, the owner of said automobile, and that Arbor Gough was acting for himself, on the day in question and at the time of the accident?  A. No.

"Question 17. If you answer question 16 'No,' then state what business Arbor Gough was transacting for Lelia Gough on the day in question and at the time of the accident.  A. Driving taxi."

Admission by defendant that she owned the automobile established just one fact—that she owned the automobile. Possession is an incident of ownership, and for some purposes there is a presumption that ownership carries possession with it. Plaintiff testified, however, that Arbor Gough had possession of the automobile at the time of the accident, and legal theory became of no importance when the fact came in that a person other than the owner had possession. Who was Arbor Gough, and for what purpose was he using the car?

Not very long ago livery was an essential transportation facility. If a team and buggy belonging to a liveryman, but driven by some one else, were seen on the highway, the first thought was the driver was a bailee. If the driver were known to be an employee of the liveryman, an observer might speculate on whether the driver was acting for himself or for his employer, but could have no basis of fact on which to rest a definite conclusion one way or the other. If the driver were accompanied by his wife and children, the inference would be he was not acting for his employer. If he were accompanied by one whose appearance and belongings indicated he was a traveler, the inference would be the traveler had hired the team and buggy with a driver. If a farm laborer should be found on the road from the farm to town, going toward town with the farmer's team and the farmer's wagon loaded with corn, the fair probability would be the farmer was marketing the corn. If later in the same day the laborer should be found with the same team and wagon two miles off the road home at a watermelon patch, the chances would be he was not acting for the farmer. These illustrations are typical of so many kinds of situations that there is no basis for a general presumption or assumption that one in pos-

session of another's vehicle is the servant, employee or agent of the owner and acting for the owner. As indicated by the illustrations, the facts and circumstances characterizing the possession determine what inference may be drawn respecting the relation of possessor and owner.

Suppose the vehicle is a Cadillac sedan. Such a car may be used for business or for pleasure. The owner may drive it himself or he may have a chauffeur or taxicab driver. The chauffeur or driver may be privileged to use the car on his own account or may make unprivileged use of it. The owner may permit members of his family to use it, he may lend it, he may let it for hire, it may be taken without his authority for temporary use, or it may be stolen from him. If the car be used as a taxicab, a willful, reckless boy, finding it unlocked while the driver is eating his breakfast, may take a Sunday morning spin in it. The result is that when plaintiff proved his own car was wrecked by Arbor Gough's negligent operation of Mrs. Crowder's Cadillac sedan, plaintiff had proved nothing warranting a solemn verdict that the driver was the owner's employee and was using the car in the owner's interest.

It is sometimes said that proof of ownership of the offending car makes a *prima facie* case that the driver was the owner's employee, and being *prima facie* an employee he was *prima facie* using the car in the owner's interest. *Prima facie* evidence and *prima facie* case mean this: The adduced proof, standing alone, warrants a finding of the fact to be proved. Proof that Mrs. Crowder owned the car with which Arbor Gough ran down the plaintiff did not warrant a finding that the driver was the owner's employee, acting at the time in her interest. Such a finding from such proof would be the result of sheer surmise, speculation, conjecture or guess, and no alchemistic process of submitting the evidence to the jury could produce other than a base finding. Until proof be adduced warranting a valid finding of the fact to be proved, the defendant may not be called on to produce explanatory, contradictory or rebutting evidence.

In Wigmore on Evidence, second edition, volume 5, section 2510a, page 502, appears the following:

"Where damage is done by the tortious act of the driver of a vehicle, and the injured person sues the owner of the vehicle, who was not the driver, it is a necessary part of the plaintiff's case that the driver was an agent of the owner and was acting at the time within the scope of his employment. May these two facts be presumed from the fact of ownership? The answer should

be affirmative, if we consider the relative facility of proof as between the parties, the ordinary habits of owners of vehicles, and the wisdom of placing the risk of not obtaining evidence upon the person who owns a valuable and dangerous apparatus and therefore should take special precautions against its misuse by irresponsible persons. The reckless irresponsibility of motorists in general, their notorious selfishness in monopolizing the highway against pedestrians, and the prevalence of homicide by motorists who set no value on the lives of others in comparison with their own convenience—all these modern facts demand that the present rule, and every other applicable rule, be employed to improve the standard of care obeyed by vehicle owners.

"Nevertheless, courts have here taken opposite views; some courts leaving upon the innocent pedestrian the entire burden of procuring evidence; in general, the courts are here apt to take an unpractical, inhumane, and overcautious attitude." (Citing *Halverson v. Blosser*, 101 Kan. 683, 168 Pac. 863.)

This section overlooks the fact that the process of subpœna makes available to a plaintiff every fact within defendant's knowledge. If, however, the section were applied to the present controversy, what would be the result? The learned author has shown elsewhere in his work on evidence (§ 2490 and following sections) that the office of a presumption of the character under discussion is to require defendant to bring forward proof in opposition to the presumption. When defendant has produced proof which the court would be obliged to submit to the jury, the office of the presumption has been fulfilled, and the case stands according to the proof, unaided by any presumption. In this instance the proof was clear that Arbor Gough was not Lelia Crowder's employee and that he was engaged in a frolic of his own when the accident occurred. The jury was not at liberty arbitrarily to disregard this evidence. Suppose, however, the jury might not have been convinced. Taking defendant's evidence out of the case would not put into the case evidence for plaintiff, and plaintiff would be required to prove the allegations of his petition or fail, which leaves plaintiff just where he started, and where plaintiffs generally must start.

In *Halverson v. Blosser* this court indicated its approval of the Massachusetts rule that it may not be presumed from the fact of ownership that the driver was the owner's employee and acting at the time of the accident within the scope of his employment. In the court's present opinion, to deduce from the simple fact of ownership of a motor vehicle the illegitimate conclusion that the driver was employed by the owner, and then deduce the further conclusion that the driver was acting within the scope of his authority, is to

resort to opportunism, which is not juridical, and instead of the expedient being "progressive," it is a retrogression to the old, stifling formalism which glorified artificiality.

The section quoted from Wigmore reveals the bug under the chip —liability of the owner because of ownership. Why should Lelia Crowder pay to B. F. Tice $3,500 because Arbor Gough injured him? Some courts answer this question with the maxim, *"Qui facit per alium facit per se."* Lelia Crowder did not carry out any purpose to injure B. F. Tice through the instrumentality of Arbor Gough. The jury found according to the fact that William Gough was in charge of the car just before Arbor Gough took it, and that Lelia Crowder had no knowledge of the fact that Arbor Gough had taken possession of the automobile. She was not an actor in any sense in respect to the collision, and the maxim has no legitimate application except to an actor.

The true basis of Lelia Crowder's liability, if any, is the maxim *"respondeat superior."* Why should the superior respond in damages for commission of an unauthorized tort? Masters of the common law, Bacon, Pollock, Maitland, Holmes, Wigmore, disagree. In his very acute and interesting book, "Vicarious Liability" (1916), T. Baty, of the Temple, London, tabulates nine different reasons which have been given for the liability. He very successfully refutes all of them, and says:

"In hard fact, the real reason for employers' liability is the ninth: the damages are taken from a deep pocket." (p. 154.)

In a well-considered article entitled "Frolic and Detour," in the Columbia Law Review, volume XXIII, pages 444 and 716, Prof. Young B. Smith proposes as a justification for the doctrine of *respondeat superior,* under present social conditions, the principle of the workmen's compensation statutes: It is believed to be socially more expedient to distribute among a large group of the community losses which experience proves are inevitable than to cast such losses upon a few. Professor Smith's suggestion is that, in view of the possibilities of insurance, the courts ought to bear in mind the suggested justification for imposing liability on the master, and seek to reach conclusions which will further the policy on which the justification rests.

The innovation of the workmen's compensation acts was accomplished by statute, and whether the time has come to extend the

underlying policy of those statutes to entire supersession of common law *respondeat superior* is a legislative question. In this state the legislature has dealt with the subject of liability of an owner for use of his car. Any owner who permits a person under fourteen years of age or an intoxicated person to operate his car is guilty of a misdemeanor (R. S. 8-121). The penal sanction of this statute was removed at the legislative session of 1923; but in the case of *Burrell v. Horchem*, 117 Kan. 678 (1925), 232 Pac. 1042, it was held that a member of the class which the statute was designed to protect may maintain an action for damages resulting proximately from violation of the statute. Under the circumstances the court finds itself in accord with the attitude of the Massachusetts court, expressed in *Trombly v. Stevens-Duryea Co.*, 206 Mass. 516:

"But to recover, the plaintiff also was required to offer some evidence of the defendant's responsibility for the driver's negligence. The legislature might have said that whenever a registered automobile was operated on the public ways, the person, firm or corporation named in the certificate should be liable *prima facie* to other travelers for accidents caused by its mismanagement. The statute, however, goes no further than to provide, that for the purposes of the issuance, transfer and revocation of certificates, and the enforcement of the penal provisions of the act, automobiles shall be identified by their register number, and their owner or owners ascertained from the certificate. The common law, therefore, controls, and there is no presumption from his mere physical possession that the person operating the automobile was the servant or agent of the corporation. He may have hired or borrowed it or wrongfully appropriated it to his own use, and in neither event would the defendant be chargeable with his misconduct." (p. 519.)

What was plaintiff's proof that Arbor Gough was an employee of defendant and operating the car in the course of her business when the accident occurred? The witnesses were police officers, who said they were familiar with Mrs. Crowder's taxicabs. They did not deny that William Gough was the regular driver of the Cadillac sedan. All they could say was that several times they had seen Arbor Gough driving the car with other persons in it. Reavy specified no time, and the others said "last summer." The evidence was not sufficient to warrant a finding that Arbor Gough was employed by Mrs. Crowder, much less that he was acting for her at the time of the accident. Having determined to find liability, the jury were obliged, in order to extend employment to October 1, to fabricate out of whole cloth the concluding portion of the finding, that Arbor Gough was employed by Mrs. Crowder as taxi driver "last summer

and fall." The true basis of the verdict is revealed by finding 9½. Mrs. Crowder's relation to the accident was "as owner," an exemplification of the deep-pocket theory of liability.

The judgment of the district court is reversed and the cause is remanded with direction to sustain defendant's demurrer to plaintiff's evidence.