No. 32,436

Lysle Stilwell, *Appellee*, v. Roy M. Faith, *Appellant.*

(52 P. 2d 635)

Opinion filed December 7, 1935.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton,* all of Salina, for the appellant.

*Lee E. Weeks,* of Kansas City, and *Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This is an appeal from a judgment for $2,000 as damages for injuries sustained by the plaintiff in a collision of automobiles on a public highway.

The collision occurred one forenoon in March, 1934, on U. S. highway 40, about halfway between Reno and Tonganoxie. The highway thereabout is paved with concrete, eighteen feet wide, with a black line painted on the slab to indicate its center line. The course of the highway is towards the northeast and southwest, and lies adjacent to a railway right of way which parallels it.

The previous night had been rainy, and at the time of the accident drizzling rain and occasional snowflakes were falling; the pavement was wet and the shoulders of the highway were muddy.

Plaintiff was the passenger guest of Miss Daisy Brown, owner of a Chevrolet coupé proceeding northeastward at 25 or 30 miles per hour. Following the coupé were two highway patrol automobiles, a passenger omnibus, and the Terraplane automobile owned by defendant. Whether the latter was being driven by defendant or by his brother was a controverted issue of fact in this lawsuit.

All these motor vehicles had been traveling faster than Miss Brown's coupé. The first patrol car with two officers passed to the left of the coupé and went ahead. Defendant's Terraplane followed and attempted to do the same, but collided with the coupé, causing it to veer sharply to the right, leave the highway, cross a ditch, break through a fence and turn over on its side. Defendant's car stopped within two feet of the point of collision with its left front wheel resting on the left shoulder of the highway. The second patrol car with two officers stopped almost at the point where the coupé left the highway and the passenger bus was not far behind. The door of the coupé was jammed so that its occupants were imprisoned until the four patrolmen, the defendant, and the bus driver, came to their rescue and pried it open. Plaintiff sustained various injuries which were the basis of this lawsuit for damages.

The petition narrated the pertinent facts, alleged that the coupé in which plaintiff was riding was being operated with due care, stated the conditions of the road and the weather, alleged the incidents of the collision and defendant's negligence in various particulars—excessive speed, failing to drive his car past the coupé in a manner which would avoid striking it, failing to sound a horn or give any warning of his intention to pass the coupé, failing to keep a proper lookout for cars ahead of him and particularly the coupé in which plaintiff was riding, and failing to slacken his speed and keep his car under proper control at the time he was attempting to pass the coupé.

Plaintiff also pleaded that as a result of the alleged negligence she suffered serious injuries, which she described in detail. She prayed for $25,000 as damages.

Defendant's answer contained a general denial and alleged that his automobile was being operated with due care at the time of the collision; that the coupé in which plaintiff was riding had been negligently driven off the east side of the pavement and then suddenly and without warning it had been carelessly and negligently driven from the east side of the pavement towards the west or left side of the pavement directly in front of defendant's car; that when the coupé crossed towards the left side of the road the brakes had been immediately applied to defendant's car, but that the collision was unavoidable; and that the driver of the coupé and plaintiff herself were guilty of contributory negligence.

The evidence for plaintiff tended to show that the coupé was

being driven on the right side of the highway with due care, and that without warning defendant's car struck the left rear fender of the coupé, causing it to swerve from the wet pavement, leave the highway, cross the fence and turn back towards the west and fall over on its left side, imprisoning and injuring the plaintiff.

At the conclusion of the evidence for plaintiff defendant demurred on the particular ground that it had not been shown that defendant himself was driving his car at the time of the collision. This point was overruled. The record recites:

"THE COURT: You don't claim he wasn't in the car?

[COUNSEL FOR DEFENDANT]: "I do not claim he wasn't in it. I claim he wasn't driving it.

"THE COURT: They may not be able to tell who was driving the car, but then the obligation is upon the defendant to show who was driving. The demurrer will be overruled."

The evidence for defendant tended to show that the two right wheels of the coupé did run off the east side of the slab almost immediately before the accident, and when the coupé was turned back on the slab it ran almost directly across the pavement to the left side of the highway; that there was not time for defendant's car to be stopped before striking the coupé; that it did strike the coupé on its left side just behind the left front fender; that defendant's car was stopped within two feet from the point of collision; and that defendant's brother, Oliver Faith, not the defendant, was driving defendant's car at the time.

Jury trial; verdict of $2,000; special findings; judgment for plaintiff; appeal.

Defendant's first objection to the general result was the trial court's ruling on the demurrer to the evidence, and particularly to the untenable theory announced by the court when it made that ruling. It is trite and settled law in this jurisdiction that liability for an automobile accident does not attach to the owner of the car from the mere fact of ownership nor from the fact that he may have been riding in it at the time of the accident. (*Halverson v. Blosser*, 101 Kan. 683, 168 Pac. 863; *Zeeb v. Bahnmaier*, 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883 and note; *Tice v. Crowder*, 119 Kan. 494, 240 Pac. 964.) See, also, notes in 64 A. L. R. 873-878; 85 A. L. R. 285, *et seq.* There are, indeed, some courts which hold that the fact of ownership establishes a prima facie liability for accidents caused by the motor vehicle. (See 2 R. C. L. Perm.

Supp. 665, *et seq.*) It may be inferred, however, that this latter view has grown out of the fact that in some states this particular matter is governed by statute. (*Parker Harris Co. v. Tate*, 135 Tenn. 509, 188 S. W. 54, L. R. A. 1916F, 936.)

When plaintiff rested, any evidence that defendant was driving his car was decidedly shadowy, probably quite insufficient to take the case to the jury. The fact that defendant owned the car which collided with the coupé was not disputed. In her case in chief, plaintiff's witness, Daisy A. Brown, testified that following the accident she talked with defendant and obtained his name. Defendant's evidence supplied scarcely any additional facts. It was shown that after the collision defendant got out of his car and ran over to the coupé which had the imprisoned women in it. One witness for defendant testified that the driver of defendant's car was Roy M. Faith, but on cross-examination he was shown some report he had made at the time of the accident, following which he said, "It must have been O. W. Faith," brother of the defendant. The defendant himself testified that his brother O. W. Faith was driving at the time of the collision, that he and the highway officers and the bus driver hastened to the overturned coupé to aid its imprisoned occupants and that it took them five minutes to hammer the door so it would open; that he talked with the owner of the coupé, she asked his name and he gave it to her in writing; but he denied that she had asked if he was driving the car.

Even the addition of this evidence cannot fairly be said to have made a prima facie showing that defendant was operating the Terraplane at the time it collided with the coupé; but plaintiff's witness, Miss Brown, was recalled. The record reads:

"Q. Now, Miss Brown, after this accident out on north number 40 on the 30th of March, 1934, I will ask you to state if you had a conversation with Mr. Roy M. Faith. A. I did.

"Q. I will ask you to state, Miss Brown, if in that conversation you asked him if he was the driver of the car that struck you.

[COUNSEL FOR DEFENDANT]: "Now, we object to that as incompetent, irrelevant and immaterial and not rebuttal. There wasn't a syllable of testimony on Mr. Faith's direct examination about any conversation with Miss Brown. This was brought out on cross-examination, and it is an attempt on his own part to rebut cross-examination. It is part of their main case if any part of their case at all.

"THE COURT: Well, even if it is only a matter of order of proof, and the courts are getting pretty liberal about such things. A. I did.

"Q. What was his answer? A. He said that he was. I asked him for his name. Written on a piece of paper. He gave it to me.

"Q. Was the man that you talked to there and the man that wrote down his name and the man that told you he was the driver of the car, Mr. Roy M. Faith, sitting over here? A. It was this gentleman with the glasses, Mr. Roy Faith."

Was this testimony competent at that stage of the case? It was only on defendant's cross-examination that he testified that Miss Brown had asked him if he was driving the car. But in his examination in chief he testified that his brother was driving at the time of the collision. Therefore it was not improper rebuttal to adduce evidence which would tend to discredit defendant's testimony on that avowal of fact. Therefore the evidence showing defendant's affirmative answer to Miss Brown's question would appear to be competent. Moreover, there is something to be said in behalf of the trial court's remarks in connection with its ruling. We construe them to mean that although plaintiff's case may have been closed with a possible shortage of proof on a material point it could be reopened at the discretion of the court and the requisite additional evidence supplied. In effect that was the real significance of the ruling; and it would be futile to reverse this judgment on the mere want of a formality which, if the cause were to be tried anew, could readily be supplied.

Defendant next attacks the special findings of the jury. Some of these read:

"1. Was Oliver Faith (brother of defendant) driving the Terraplane at the time and place of the collision? A. No.

"2. Did the coupé remain on the right side of the road until the Terraplane was about to pass it? A. Yes.

. . . . . . . . . . . . . .

"4. Did the right wheels of the coupé run off of the east or right side of the pavement a short distance from the place of the collision? A. Yes.

"5. . . . State whether or not when the coupé was driven back on the slab, it ran to the left and across the center line of the pavement. A. Yes.

"6. . . . State whether or not after the coupé left the right side of the slab and while it was running to and across the center line of the pavement did the driver of the Terraplane have time to avoid the collision? A. Yes.

"7. . . . State whether or not after the driver of the Terraplane discovered that the coupé was coming toward or onto the left side of the slab, did he do all that he could to avoid a collision? A. No.

"8. Did the cars collide at the left of the center line of the pavement? A. Yes.

. . . . . . . . . . . . . .

"10. Were plaintiff's injuries caused by an unavoidable accident? A. No.

"11. If you find that the defendant was guilty of any negligence which caused the collision, state specifically what his acts of negligence were. A. (1) Not sounding horn; (2) not pulling to left far enough; (3) too great a speed under existing weather conditions."

Particular objection is made to Nos. 1, 6, 7 and 11 of these findings. Touching the first of them, it is quite true that several witnesses gave testimony which, if believed, would have compelled an affirmative answer to this question; yet, as we have seen, there was sufficient evidence developed eventually to take to the jury that controverted issue of fact.

Touching the jury's response to the sixth question, the defendant's own testimony was that when he saw the wheels on the right side of the coupé run off the slab on to the slippery shoulder of the road and turn sharply back across the pavement, his car was 40 or 45 feet behind, "maybe 50," and his car was traveling around 40 miles per hour, "maybe 35 to 38." In view of that testimony, it cannot be said that there was no evidence to support the jury's special finding No. 6. And the same observation must be made in respect to special finding No. 7. One of defendant's witnesses, Richardson, testified that the coupé had only gone to the left of the center line of the highway "about 12 or 18 inches." Another of defendant's witnesses testified that "the collision occurred about the middle of the pavement." Plaintiff's evidence was to the effect that the coupé was on the right side of the center line. The jury's finding No. 8 shows that the coupé was in fact on the left side of the center line, but in view of Richardson's testimony it is clear that question No. 7 (as well as No. 10) was one for a jury to decide.

Fault is next found with the jury's findings of negligence in No. 11. It is argued that the sounding of a horn would not have averted the accident. That does not appear. Neither plaintiff nor the driver of the coupé was apprised that defendant wished to pass their car. A timely sounding of the horn might have given the driver of the coupé an opportunity to comply with the implied request for more space to pass. Since there was testimony that the coupé was not more than 12 to 18 inches over the center line of the highway, it could not be said as a matter of law that there was insufficient space for defendant to pass if his car had been steered somewhat further to the left. It was a jury question. And as to the third ground of negligence found by the jury we think it was well established by the circumstances and is altogether unassailable.

A motorist in a hurry has no absolute right to require all other cars ahead of him to get out of his way. The others have exactly the same rights as himself. Much depends on the condition of the road, the weather and the congestion of traffic. And even where a slower motorist refuses to steer far enough to the right to give another motorist an opportunity to pass when requested to do so by a timely sounding of the horn, the remedy for such discourtesy is not that of driving ahead to pass regardless of such a consequence as happened in the case at bar.

Error is also assigned in the admission of testimony. Among plaintiff's injuries as first alleged she pleaded that her chest was bruised, her fifth rib fractured, and that a false joint had formed at its junction with the spine. Defendant's motion to make more definite and certain was overruled; but later, over defendant's objection, plaintiff was permitted to amend her petition by substituting the "third and fifth ribs" as the ones injured in lieu of the "fifth rib" as first alleged. These rulings were quite within the discretion of the trial court; consequently evidence pertaining to such injuries was competent.

A surgeon or other medical expert testified to a defective union between the collar bone and the sternum. This was objected to, but went in on the word of the professional expert that the juncture of the clavicle and sternum was part of the chest wall, whose injury had been alleged. That seems reasonable to our nonprofessional minds.

Yet another error is urged on the ground that the medical expert's opinion was based in part upon the history of the case. However, that matter was cleared up before the expert left the witness stand. The record reads:

"Q. Doctor, those physical injuries that you have described were based upon your own findings, were they not? A. Yes, sir.

"Q. And not from any history she gave you relative to the case? A. No, sir."

A patient perusal of the record and briefs of counsel reveals no error of sufficient gravity to justify our interference with the judgment, and it is therefore affirmed.

BURCH, C. J., not sitting.