No. 33,119

W. R. Quail, *Appellee*, v. The Kansas Power & Light Company, *Appellant*.

(64 P. 2d 565)

Opinion filed January 23, 1937.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove* and *Robert E. Russell,* all of Topeka, for the appellant.

*T. M. Lillard, O. B. Eidson* and *Philip H. Lewis,* all of Topeka, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages to plaintiff's automobile when defendant's streetcar collided with it on a Topeka street some six years ago.

The case was here before to review an adverse ruling on the sufficiency of plaintiff's evidence to sustain his cause of action. (*Quail v. Kansas Power & Light Co.,* 137 Kan. 478, 21 P. 2d 332.)

It will presently suffice to say that as plaintiff was proceeding westward on Tenth street in his automobile, at about ten miles per hour, defendant's streetcar overtook him and in the collision which followed the left rear fender, left running board and left front fender of plaintiff's car were shorn or ripped off and some other damage done which need not be detailed.

· In this retrial of the action the jury returned a general verdict for plaintiff in the sum of $148.70, and answered special questions thus:

"1. If you find for the plaintiff, at what rate of speed was the streetcar traveling at the time of the collision? A. 15 miles per hour.

"2. If you find for the plaintiff, how far was plaintiff's automobile in front of the streetcar when it came close enough to track to be in a position of danger? A. 15 feet.

"3. If you find for the plaintiff, within what distance could the motorman, in the exercise of reasonable care, have stopped the streetcar at the rate he was traveling immediately before the collision? A. 50 feet.

"4. Do you find and believe from the evidence in this case that there was a congested condition of traffic at and adjacent to the point of the accident involved in this case? A. Yes.

"5. At what rate of speed do you find the plaintiff was operating his automobile just before the accident in this case occurred? A. Ten miles per hour.

"6. Do you find and believe from the evidence in this case that the plaintiff, just prior to the accident, had been driving his automobile in a straight east-and-west direction without turning to the left or to the right? A. Yes.

"7. If you answer question No. 6 'yes,' then state the distance the plaintiff had been so operating his car immediately before the accident happened. A. 75 feet.

"8. Do you find and believe from the evidence in this case that the plaintiff was operating his automobile in a careful and prudent manner in view of the conditions existing at the time and place in question? A. Yes."

Judgment was rendered for plaintiff, and defendant assigns various errors, the first of which relates to the overruling of its demurrer to plaintiff's evidence. A careful reading of the record not only fails to support this assignment, but the controlling evidence was not substantially different from that adduced in the first trial, which was summarized in our opinion and held sufficient to withstand a demurrer thereto. Here, indeed, there was one additional fact, to which defendant attaches much significance. Plaintiff admitted that as he proceeded westward on Tenth street he did not look toward the rear nor into his rear vision mirror to ascertain if a streetcar was coming behind him. Defendant argues that this fact established plaintiff's contributory negligence as a matter of law. We cannot assent to that. Under the circumstances at the time and place, the traffic thereabout being congested by double parking, it is doubtful if even a jury would have been warranted in a finding of contributory negligence. There is no hard and fast rule pertaining to the use of the street which requires a motorist to be on the lookout for other motorists who may be coming up behind him and to get out of their way.

In *Stilwell v. Faith*, 142 Kan. 730, 736, 52 P. 2d 635, where defendant's faster driven car overtook and struck the car in which plaintiff was riding, this court said:

"A motorist in a hurry has no absolute right to require all other cars ahead of him to get out of his way. The others have exactly the same rights as himself. Much depends on the condition of the road, the weather and the congestion of traffic. And even where a slower motorist refuses to steer far enough to the right to give another motorist an opportunity to pass when

requested to do so by a timely sounding of the horn, the remedy for such discourtesy is not that of driving ahead to pass regardless of such a consequence as happened in the case at bar."

It is true, of course, that a streetcar has some privileges on a public street not accorded to vehicles in general. (*Commonwealth v. Temple*, 80 Mass. [14 Gray] 69; *Cohen v. Metropolitan St. Ry. Co.*, 68 N. Y. S. 830; 1 Nellis on Street Railways, 2d ed., § 19 *et seq.*). But these privileges must be exercised with due regard to others lawfully using the street; and although a private vehicle going in the same direction may unduly retard the progress of a streetcar, it certainly is an actionable tort for the streetcar to cause an avoidable rear-end collision. (*Baldie v. Tacoma R. & Power Co.*, 52 Wash. 75, 100 Pac. 162.) In 3 Elliott on Railroads, 3d ed., it is said:

"A street railway company is not bound, as to other travelers upon the street, to use the highest possible degree of care . . . in running its cars, but it should act with reference to the fact that travelers have, in general, equal right to use the street and are to be expected upon it, and should use reasonable care, under the circumstances . . . the car should not be run at a dangerous, unusual and unnecessary rate of speed. It should not exceed the ordinance or statute rate of speed, and even that rate may be negligent under particular circumstances. So, care should be exercised not to collide with vehicles or persons on or near the track. . . .

"There are many cases in which vehicles have been run into from behind by streetcars going in the same direction. . . . One is not a trespasser merely because he is driving along that part of a street occupied by a street railway track, and, indeed, it is often necessary to drive along a street railway track for a short distance to avoid an obstruction or the like. One who does so has a right, within limits, to suppose or assume that a car will not approach dangerously near him from the rear at a high rate of speed, or without a lookout or warning, for the company cannot under ordinary circumstances run him down without being guilty of negligence or willful wrong, and while he, himself, must exercise reasonable or ordinary care, he is not required to keep a constant lookout behind. 'The very fact that a streetcar drives upon a vehicle which is proceeding ahead of it in the same direction,' says Judge Thompson, 'furnishes cogent evidence of negligence capable of explanation in very few cases.'" (§§ 1531, 1532.)

See, also, notes in 63 A. L. R. 10 *et seq.*; 102 A. L. R. 716 *et seq.*; and 2 Thompson's Commentaries on the Law of Negligence, 2d ed., § 1404.

The cases which appellant cites relate to such special circumstances as where the motorist ahead intends to alter his course to the right or to the left. There was testimony adduced by de-

fendant that plaintiff did suddenly turn his car into the path of the streetcar "like he was trying to make a U-turn," but the jury's special findings 6, 7 and 8 discredited that testimony, and plaintiff's evidence on that dispute of fact was to the contrary.

It is next contended that defendant was entitled to judgment on the special findings notwithstanding the general verdict. Defendant's interpretation of finding No. 2 is that plaintiff "was negligent in placing himself in a position of peril within fifteen feet of a streetcar which could not . . . be stopped within fifty feet." (Finding No. 3.) But the jury's findings should be harmonized, and in the light of findings 6, 7 and 8, it is manifestly improper to construe finding No. 2 to mean that plaintiff "placed" himself in a position of peril when the streetcar was only 15 feet away. The jury made no finding of the streetcar's speed when the motorman first saw the possibility of his running into plaintiff's car. The jury found that the streetcar was traveling 15 miles per hour *immediately* before the collision. If, as the motorman testified, plaintiff's car was 30 feet ahead when the motorman first saw it, and he forthwith "pulled my air and shut off the juice," the streetcar must have reduced its speed substantially before its rate was only 15 miles per hour just prior to the collision. Again, if the streetcar was traveling at 15 miles per hour and plaintiff's car was traveling 10 miles per hour, the streetcar would have to travel 45 feet before it could gain the entire distance between the vehicles, which would be within 5 feet of the distance the jury found needful to bring the streetcar to a complete stop. But the undisputed evidence was that the streetcar sheared off both left fenders and the left running board from plaintiff's car and went on for a distance of two feet west of plaintiff's car before it was brought to a stop. Adding the distance between the cars when the motorman first applied his brakes, which was 30 feet, to the length of the plaintiff's automobile —say 15 feet—plus the length of the streetcar, 38 feet, plus the 2 feet to the point where the streetcar came to a stop, it is obvious that the streetcar must have traveled a total distance of about 85 feet from the time the motorman "pulled my air and shut off the juice." The jury found the streetcar could have been stopped in 50 feet. It therefore becomes clear that defendant's contention that it was entitled to judgment *non obstante* cannot be sustained.

There is nothing further in this record nor in appellant's brief which needs to be discussed; and as no material error is made to appear, the judgment is affirmed.