No. 35,703

LEE DONALD GREIVING, a Minor, by His Father and Next Friend, VICTOR GREIVING, *Appellee,* v. PAUL LA PLANTE and the PHILLIPS PETROLEUM COMPANY, *Appellants.*

(131 P. 2d 898)

*Edward F. Arn,* of Wichita, argued the cause for appellant Paul La Plante; *George Siefkin,* of Wichita, argued the cause for appellant Phillips Petroleum Company; *W. E. Holmes* and *Howard L. Baker,* both of Wichita, were on the briefs of appellant Paul La Plante; *Robert C. Foulston, John F. Eberhardt,* both of Wichita, *Don Emery, H. P. Robinson* and *Rayburn L. Foster,* all of Bartlesville, Okla., were on the briefs of appellant Phillips Petroleum Company.

*L. M. Kagey,* of Wichita, argued the cause, and *Carl O. Bauman,* of Wichita, was on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J: A minor recovered damages for personal injuries resulting from the igniting of gasoline which had been bought by another minor, at a filling station. Defendants appeal from orders overruling demurrers to the evidence and motions for judgment "upon

the undisputed and uncontradicted evidence in the case," notwithstanding the general verdict. The issues presented are whether the person who sold the gasoline was shown to be the agent or employee of defendants or either of them; whether the evidence supported any findings of actionable negligence and if there was such negligence whether the evidence compelled a finding of contributory negligence on the part of the plaintiff.

The essential facts may be briefly stated. The plaintiff, Lee Donald Greiving (hereinafter referred to as Lee), a boy ten years old, was playing near his home with another boy, Donald Kirkpatrick (hereinafter referred to as Donald), who was nine years old. They had a fire in a little can and had used some coal oil to make the fire burn better. According to Donald's testimony Lee told him to go across the street to the filling station and buy some gasoline and "to say that his Daddy wanted it to clean out spots on a hat." Donald went over and bought two cents worth of gasoline and gave it to Lee. Lee poured the gasoline on the fire and in some way, not entirely clear from the testimony, his leg was severely burned. Action was brought against the Phillips Petroleum Company and Paul LaPlante, the allegation being that they individually and jointly owned, operated and controlled the filling station. Two principal acts of negligence were alleged: (a) selling gasoline to a minor nine years of age who did not apppreciate the dangerous qualities of gasoline and who was likely to be injured by it, and (b) delivering the gasoline in an open can which was not painted red or labeled "gasoline" as required by the statutes and the city ordinance. Plaintiff asked damages in the amount of $8,428. Neither of the defendants offered any evidence, both choosing to stand upon their separate demurrers to plaintiff's evidence. Verdict was for plaintiff for $822 for pain and suffering and for $178 for medical attention. Nothing was allowed for permanent injuries. To a question as to the nature of defendants' negligence, if any, the jury answered: "That their employee sold 2¢ worth of gasoline to a 9-year-old child and put it in an open tin can."

We deal first with the demurrers to the evidence. It is clear that the court erred in overruling the demurrer of the Phillips Petroleum Company. As before stated, it was alleged in the petition that Phillips and LaPlante individually and jointly owned and operated the station. Such ownership and operation was put in issue by the answer of Phillips. In his opening statement counsel for the plaintiff said:

"I think the evidence will show unquestionably that the *Phillips Petroleum Company own this station up there and just what relation the Phillips Petroleum Company bears* to LaPlante will probably be shown in the evidence later on, *but Mr. LaPlante apparently is the operator of the station up there."* (Italics ours.)

In the opening statement for Phillips counsel admitted that the company owned or leased the land upon which the station was built, and stated that the property had been leased to LaPlante and that the company was not operating the station and had not operated it "for quite a period of time." The burden was upon the plaintiff to establish—by direct proof or by circumstances from which reasonable inference of agency could be drawn—that the Phillips company exercised some supervision or control over the attendant who sold the gasoline. In addition to the bare fact of ownership of the land upon which the station was built the only other evidence submitted for the purpose of connecting the Phillips company with the transaction was the fact that there was a sign "Phillips Petroleum Company" at the station and one or more signs advertising Phillips products. Indeed, the abstract merely shows that there were certain signs at the station. However, we accept counsel's statement as to what the signs were. Citation of authorities is scarcely needed in support of the proposition that tenancy alone is insufficient to render the landlord liable for the torts of the tenant or that the mere fact of ownership of property or that goods marketed under the trade name of such owner are advertised and sold there is insufficient to show that the one who sells the goods is the agent or employee of such owner. (2 C. J. S. 1030; 32 Am. Jur. 537; *Tice v. Crowder,* 119 Kan. 494, 240 Pac. 964; *Stilwell v. Faith,* 142 Kan. 730, 732, 52 P. 2d 635.) The trial court erred in overruling the Phillips Petroleum Company's demurrer to the evidence.

We next consider the demurrer of LaPlante, the operator of the station. We think there was sufficient evidence to withstand demurrer on the question of whether the attendant who sold the gasoline was the agent or employee of LaPlante. In his answer LaPlante admitted that he was the operator of the station. The father of the plaintiff testified that about a week and a half after the accident he went to the station and talked to the attendant who had been pointed out to him as the one who sold the gasoline; that he was a man whom he knew by sight and had seen working there; that the attendant admitted selling the gasoline; that he was wearing a green uniform and that LaPlante was there while he was talking to the

attendant and asked what it was about and then got busy waiting on customers. As before noted, LaPlante offered no evidence.

We come to the question of whether plaintiff's evidence presented an issue for the jury as to actionable negligence on the part of LaPlante. Ordinarily a question of negligence is one for the jury, but where the facts are undisputed—and here, upon demurrer, plaintiff's evidence is accepted as true—it is the province of the court to say whether upon the facts, taken most favorably to the plaintiff, actionable negligence can be inferred. (*Smith v. Mead Construction Co.*, 129 Kan. 229, 233, 282 Pac. 708; *Cleghorn v. Thompson*, 62 Kan. 727, 733, 62 Pac. 605.)

Before examining the evidence let us state the narrow issue presented. It will be helpful, we think, first to clarify the issue by elimination. We are not here asked to determine whether it is negligence *per se* to sell gasoline to a nine-year-old boy. Nor, is our question whether La Plante might be held liable if the child himself to whom the gasoline was sold had been injured. Nor, whether there would be liability if the child who bought the gasoline had so used or handled it that injury resulted to another child. Our issue must be narrowed by the undisputed facts in this particular case. Our question is whether the injury to the plaintiff, *under the facts and circumstances shown by the evidence*, was a result which an ordinarily prudent person would reasonably think might happen if he sold the gasoline to the boy to whom he did sell it. Before examining that question we can dispose of the incidental matter of delivering the gasoline into a can which was not painted red or marked "gasoline." That feature may be eliminated. Both boys knew that they were handling gasoline. Red paint on the can or a label would have added nothing to their knowledge or affected their actions. No attempt was made to show that the absence of such markings had any causal connection with the accident. That the trial court also had this view appears evident from the fact that it instructed the jury as follows:

"You are instructed that the plaintiff alleges that the defendants were guilty of negligence in *selling gasoline to a child* and that this negligence was the proximate cause of plaintiff's injuries, and *this is the sole question of negligence that is submitted to you*, and this the plaintiff will have to prove by a preponderance of the evidence before he will be entitled to recover."

Before examining the evidence let it be made clear that the testimony of Donald who bought the gasoline and of Lee who used it to his injury is not here considered in connection with the issue of

contributory negligence. On a question of negligence it is of course well established that in appraising the acts or conduct of a child a very different standard is to be applied than in the case of adults. Both law and human experience demand that the acts of a child be viewed through more tolerant and sympathetic eyes. We here examine the undisputed testimony of the two boys solely for the purpose of tracing the chain of facts and circumstances which intervened between the sale to Donald and the injury of Lee. Upon those facts and circumstances depends the answer to our inquiry—whether the ultimate result was of a sort or character which the defendant may reasonably be charged with foreseeing.

It is not our purpose to write an essay on the subject of actionable negligence, or specifically upon "proximate cause." The cases are legion, and the distinctions sometimes tenuous. There is, however, fair agreement as to the general rule. The difficulty arises in applying it to particular facts. (38 Am. Jur. 701.) The general rule is variously worded: that the particular result or injury complained of must be something within the reasonable contemplation of an ordinarily prudent man; that it "must be the legitimate consequence of the wrong done" (38 Am. Jur. 697); that the law does not charge a person with all possible consequences of a wrongful act and that he cannot "be held responsible for a remote cause" (30 Am. Jur. 699); that a person is only responsible "for a consequence which is probable, according to ordinary and usual experience" (38 Am. Jur. 712); that "an injury is deemed the natural and probable result of a negligent act if after the event, and viewing therefrom in retrospect to the act, the injury appears to be the reasonable rather than the extraordinary consequence of the wrong" (38 Am. Jur. 707, 712, 713); that there must be a "natural continuous sequence, unbroken by any new and independent cause, [which] produced the injury." (45 C. J. 909.) So much for generalizations. What are the instant facts?

Donald, who bought the gasoline, testified:

### Direct Examination

"Q. Just tell the jury what you did up there, will you? A. Well, I had a spring, a bed spring, and I went and put it down out there in the back yard and used it for a boat and had a fire in a gallon syrup bucket and had leaves and sticks of wood and then I went in and got some coal oil and brung it out and put some on the fire and then set it down and the fire started burning, but it didn't burn high enough and Lee Donald told me to go over and get

some gasoline and to say that his Daddy wanted it to clean out the spots on a hat; and I went over and got the gasoline and told the man that I wanted two cents' worth of gasoline and gave him the two cents and he gave me two cents' worth of gasoline and I brung it over.

. . . . . . . . . . . . . . . . . . .

"Q. O. K., go ahead with your story. A. I brung the gasoline back and gave it to Lee Donald and he took the gasoline and poured it on the fire and then the can ketched on fire and he threw the can in the air and it caught some sacks, gunny sacks laying on the bed springs and it caught them afire and he ran pretty far and then rolled over.

"Q. These gunny sacks, did you see the gasoline spill on his pants leg? A. No, the coal oil was on his pants leg before that.

"Q. Was this fire burning; could you see it flaming up when he poured the gasoline on there? A. I could see it. I thought he would be able to see it, too.

"Q. You knew it was burning, did you? A. Yes.

"Q. Why did you get the gasoline then? A. Because he said he wanted it and I told him that it was burning."

. . . . . . . . . . . . . . . . . . .

"Q. What happened when he poured the gasoline on that can; did it sort of explode? A. It just sounded like a firecracker or something going off.

"Q. That's what caught his pants on fire, was that explosion there, was it? A. Yes."

### Cross Examination

"We had poured the coal oil in the gallon syrup bucket. The fire was on top of the bed springs. We had little chips of wood and leaves in the bucket. My mother gave me the coal oil. Lee had some coal oil on his pants leg. He must have spilled it. When I went over to get the gasoline, I said that I wanted it for my mother to clean some spots off of my daddy's hat. I carried the gasoline over into my back yard. I didn't spill any.

"Q. When you got over to your back yard what did you do with it? A. I handed the gasoline to Lee Donald and told him not to pour it on because it would explode and burn; burn the gunny sacks.

"Q. You thought there was some fire there yet? A. Yes.

"Q. What did he say when you told him that? A. He said that he—I don't remember what he said.

"Q. Well, did he think there was any fire there? A. No, I don't think he did."

## Lee, the plaintiff, testified:

### Direct Examination

"We were playing in the yard and had a spring off of the bed and had a fire in a little can on the spring. We put some chips of wood and leaves in the can and put some coal oil in, but it didn't burn so good. Donald went over and got some gas and when he came back I took it and poured it on.

"Q. Now tell what happened. You say you started to pour it in the can; then what happened? A. I jerked the can back and got some on my pants leg.

"Q. Did it catch on fire or anything like that when you poured it on there? A. Yes.

. . . . . . . . . . . . .

"The can in which Donald Kirkpatrick got the gasoline was the size of a tomato can. It had no paper on it. The entire top was open.

. . . . . . . . . . . . .

### Cross Examination

"I am in the fourth grade in school. I have lived at 1550 North Broadway about three years and have been acquainted with the Kirkpatrick boy all that time. We were playing in the yard with some bed springs and a can and some coal oil. We got the coal oil at Mr. Kirkpatrick's house.

"Q. You knew that coal oil would burn? A. It didn't burn too good.

"Q. They knew of course that you took the coal oil? A. What?

"Q. Donald's mother knew of course that you took the coal oil? A. I never took it; Donald did.

"Q. It didn't burn so good and you wanted something that would burn better; that's right, isn't it? A. Yes.

"Q. And you thought gasoline would burn better than coal oil, didn't you? A. Yes.

"Q. And that's why you decided to get some gasoline? A. Yes.

"Q. You knew that if you put gasoline on the fire that it would burn and burn very quickly, didn't you? A. Yes.

"Q. How did you come to spill some of this on your pants leg? A. I jerked the can back.

"Q. Did you know there was coals in the fire when you started to pour the gasoline on there? A. No.

"Q. You had had a fire there? A. Yes.

"Q. In the can? A. Yes.

"Q. And you thought it was out? A. Yes.

"Q. You knew of course if you put gasoline on the fire it was going to burn very quickly, didn't you? A. I didn't know there was any fire in it.

"Q. In other words you thought the fire was out? A. Yes.

. . . . . . . . . . . . .

"Q. When you went to put the gasoline on there some of the other children said something about there might be a fire in there yet, didn't they? A. Yes.

"Q. And didn't you tell them that you knew how to pour it on or something? A. No.

"Q. You didn't tell them that. You thought the fire was out though, didn't you? A. Yes.

"Q. And of course you know enough that if there was a fire there and you knew it you wouldn't have poured the gasoline on it, would you? A. No.

"Q. You had learned that in school already, hadn't you? A. Yes.

"Q. You had learned that you can't pour gasoline on fire; isn't that right? A. Oh, yes.

"Q. Hadn't your mother and your daddy ever talked to you besides that; I mean told you that it was dangerous to put gasoline on the fire? A. Yes.

"MR. KAGEY: Will you fix the time as to whether it was before or after March 19, 1941?

"COURT: He has answered the question. Now you can ask him that question.

"MR. ARN: Q. Well, I mean back even before this injury which you got, you have known for a long time that it was dangerous to put gasoline on a fire haven't you? A. Yes; uh-huh.

"Q. Had your parents talked to you about that sometime or other and told you about how dangerous it was to put fire on gasoline? A. Well, I never had played with gasoline before.

"Q. Well, had your parents ever talked to you about it or had you heard them say anything to you about gasoline burning and being dangerous if it was around the fire? A. Yes."

Summarizing, we have this chain of facts and circumstances:

Donald, nine years old, who lives across the street from the filling station, tells the attendant—following the suggestion of Lee, ten years old—that his mother wants some gasoline to clean some spots off his daddy's hat;

The attendant sells Donald two cents' worth of gasoline;

Donald knows that gasoline is dangerous;

Donald delivers the gasoline to Lee;

Donald thought there was still some fire in the can in which they had had a fire and upon which they had used coal oil which Donald had secured at his home;

Donald told Lee not to pour the gasoline on "because it would explode and burn";

Lee knew that gasoline was dangerous and should not be poured on a fire;

Lee thought the fire was all out, and in disregard of the warnings, poured the gasoline.

Result, Lee's leg was painfully and severely burned.

Applying the rule, can it be said that La Plante, employer of the attendant, is chargeable with the injury which was suffered by Lee? In other words, can such an ultimate result, taking place under such facts and circumstances, be said to be one which a person of ordinary prudence should have foreseen as resulting in natural and unbroken sequence from the sale of the gasoline? If so, where would the bounds of liability be reached? Suppose the mother of the boy buying the gasoline had actually sent for it for cleaning purposes and her boy had set the can on the back porch and another boy had come along and taken it and given it to another boy and he to another and the last boy in the chain—all of whom knew the dangerous nature of gasoline—had poured it, regardness of warnings, where it would be ignited, because he thought the fire was out.

Would the seller be liable? If not, why not, if he can be said to be liable in the instant case? We must conclude that both the rule and practical reason require us to hold that Lee's injury, under these circumstances of remoteness and intervening events, was not within the probabilities, the natural sequence, which the appellant is chargeable with foreseeing. (*Beldon v. Hooper,* 115 Kan. 678, 679, 680, 224 Pac. 34; *Cleghorn v. Thompson,* supra; *DeBauge v. De-Bauge,* 143 Kan. 880, 57 P. 2d 31.)

It follows from what has been said that plaintiff's evidence established no cause of action against La Plante and the court erred in overruling his demurrer.

The judgment is reversed with direction to enter judgment for the defendants.

HARVEY, J. (dissenting in part): I concur in the judgment as to the Phillips Petroleum Company. It had specifically denied any responsibility on the ground that it was not operating the filling station, and had denied that La Plante, or anyone employed by him, was its agent. I think the evidence of plaintiff was short of establishing any liability as against the corporation. On the other hand, La Plante in his answer admitted he was operating the station. In my judgment the evidence clearly showed negligence on the part of the operator of the station in selling the gasoline, and it was such negligence that injury to someone, or to property, might reasonably have been anticipated. Appellants do not argue the question of the lack of proximate cause. Negligence in this case, and the question of the remoteness of it, were proper questions for the jury. In my judgment the negligence of the defendant La Plante, found by the jury and approved by the trial court, should be affirmed.

SMITH, J., joins in the foregoing dissent.