No. 32,965

JOHN D. TOOMEY, *Appellee*, v. WICHISON INDUSTRIAL GAS COMPANY et al., *Appellants*.

(61 P. 2d 891)

Opinion filed November 7, 1936.

*Arnold C. Todd, Ralph Gore* and *Kurt Riesen,* all of Wichita, for the appellants.

*J. B. Patterson* and *Jesse D. Wall,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for damages for injuries sustained by plaintiff in the basement of a business building in Wichita.

There are two competing gas companies in Wichita, the Wichison Industrial Gas Company and the Wichita Gas Company. For some time prior to May 1, 1934, the former had been supplying gas to the business house of the Rorabaugh Dry Goods Company under a contract which expired on that date. The Wichita Gas Company was under contract to supply gas to the Rorabaugh Company, its services to commence as soon as its gas connections and meters could be installed after the retiring gas company had detached and removed its meters and related equipment.

Plaintiff was the foreman of the *Wichita* company. One Walkley was foreman of the *Wichison* company. On the morning of May 1, Walkley and three workmen went to the basement of the Rorabaugh building and commenced to disconnect and remove the equipment of the Wichison company. Shortly thereafter this plaintiff and four workmen also went to the basement and commenced such prelimi-

nary work as was practical to do, so that the interruption of the gas supply for the Rorabaugh building in changing the service from the one gas company to the other would be as brief as possible.

There was nothing about this work that was new or strange to the two foremen or to the crews of men working under their direction. Both foremen and crews had done this sort of work frequently. Good feeling prevailed between the foremen and their crews; and they were accustomed to coördinate their work in changing the services of their rival employers.

The basement of the Rorabaugh building had two rooms, perhaps more. We have not been furnished with any sketch, as authorized and invited by rule 6 (e), to aid us in visualizing the *locus in quo;* and the descriptions of the situations which appear in the record are somewhat difficult to follow. However, it does appear that in the west one of those basement rooms was situated a gas boiler. It was fed through a large pipe which passed through a partition wall and projected several feet into another room in the east, sometimes called the laundry room and again called the meter room. This pipe was up near the ceiling but had no support from it. There was a cement ledge on the south or southeast corner of this room on which the gas meters were placed. By suitable angular and other connections the pipe projecting from the boiler room was attached to the meters, but in that system of connections there was an intermediate device called a regulator or steam control valve. This was a metal contrivance which weighed about 380 pounds. On the underside of this mechanism was an unattached piece of 2-inch pipe which served as a prop and which rested on the cement ledge. When in running order the regulator was supported on one side by its L connection with the large pipe which came through the partition wall and on the other side by flanges and other devices connecting it with the meters. There were, however, no ceiling supports for this regulator or its attachments.

About the time the meters and related fixtures of defendant had been detached, this plaintiff was standing about eight feet away from any work being done by defendant's workmen. He was facing eastward and watching the construction of some scaffolding by his own crew. Suddenly the prop which supported the regulator slipped and that contrivance swung downward, taking the direction of an arc of a circle whose center was the pipe projecting from the boiler room. The plaintiff was struck on the foot, knocked down and injured.

Plaintiff brought this action against the Wichison Industrial Gas Company and Walkley, its foreman, pleading the pertinent facts and charging them with negligence in dislodging the two-inch pipe which supported the regulator, and that they did so knowingly, "recklessly, carelessly, wantonly and willfully" whereby the regulator was caused to fall and inflicted the injuries on plaintiff.

The Wichison Industrial Gas Company answered with a general denial, traversed various allegations of the petition, and alleged that—

" . . .. the plaintiff in his capacity as an employee of the said Wichita Gas Company knew or should have known and observed the construction and location of the governor-regulator and service pipe line of the Rorabaugh Dry Goods Company as he stood in the basement rooms of said dry goods company, as alleged in his petition, and as the result thereof the said plaintiff had equal opportunity with that of the employees of this defendant to know whether said governor-regulator of the Rorabaugh Dry Goods Company might move from the place it was stationed and fall to the floor, but notwithstanding that he failed to exercise ordinary care and prudence in protecting himself."

The defendant company's answer continued:

"This defendant further alleges that the plaintiff was at all the times alleged in his petition acquainted with the dangerous character of the work and operations described in his petition, being engaged in an occupation which required a similar type of work and operations. That knowing full well the possibilities of injury inherent in such work and operations, as alleged in his petition, the plaintiff voluntarily chose to remain in the position of peril when he should have and could have retired to a safer position until it became necessary for him to enter the premises rightfully and perform his work. That the plaintiff well knew he was under no obligation or duty and had no right to enter or remain upon the premises until this defendant had completed its work of removing its pipe line and gas meters. That the plaintiff through his carelessness and disregard for his own safety contributed directly to his own injury. That knowing the hazards of his position on the occasion alleged in plaintiff's petition and having had sufficient time before the alleged accident to have sought a safer place the plaintiff assumed the risk manifest in the situation and is now without right to complain of injuries sustained through his own choice, carelessness and negligence."

The cause was tried before a jury. At the conclusion of plaintiff's evidence, the defendant company interposed a demurrer thereto. This was overruled, and evidence for the defense was adduced; but no sharp dispute of material fact was developed. In its instructions to the jury the trial court defined the main issue thus:

"The plaintiff is suing both the Wichison Industrial Gas Company and the foreman, Frank S. Walkley, claiming that they were both negligent . . . in dislodging a two-inch pipe standing unsecured under the steam-control valve

and that the two-inch pipe fell from under the steam-control valve, allowing the heavy pipe to come down upon his foot.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"The defendants have filed answers denying any liability on their part and deny that they were negligent in any manner, and further allege that if plaintiff was injured, as he. claims, that his injuries were caused by his own negligence and they are therefore denying any liability to the plaintiff in any sum whatsoever."

The jury returned a general verdict for plaintiff in the sum of $1,650 "against the defendant, Wichison Industrial Gas Company, but not against Mr. Walkley, the foreman," and answered special questions, as follows:

"2. Was the plaintiff, Toomey, familiar with and skilled in the character of work being performed by the employees of the defendant, the Wichison Industrial Gas Company, at the time of the accident in question? A. Yes.

"3. Prior to the accident, did the plaintiff know or have reasonable opportunity to ascertain inherent and attending dangers in the character of work being performed by the employees of the defendant, the Wichison Industrial Gas Company? A. Yes.

"4. Did the plaintiff, Toomey, appreciate the danger attendant upon the work being done by the Wichison Industrial Gas Company's employees? A. No.

"5. Prior to the accident in question, did the plaintiff have reasonable opportunity to exercise his judgment with respect to his safety and to place himself in a safe position until the employees of the Wichison Industrial Gas Company had completed their work? A. Yes.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"7. Did the Wichison Industrial Gas Company maintain the service line from the. steam regulator to the furnace? A. Yes. .

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"10. Were the defendants, the Wichison Industrial Gas Company or Frank S. Walkley, through their employees and assistants, guilty of negligence which was the direct or proximate cause of the injury sustained by the plaintiff? A. Yes.

"11. If you answer question No. 10 in the affirmative, state in detail what constituted said negligence. A. In not taking proper precaution in securing regulator securely after disconnecting meters and headers from pipes.

"12. Was the plaintiff guilty of negligence that contributed to his injuries? A. No."

Judgment was entered on the general verdict and the defendant gas company appeals.

The substance of defendant's objections to the judgment is that neither it nor its crew of workmen owed any duty to look out for the safety of plaintiff; that he was a mere licensee in the laundry room while defendant's workmen were disconnecting and removing

its meters and fixtures. It also contends that plaintiff was fully aware of the nature of the work defendant's employees were engaged in, and knew the dangers incident to the detaching of the meters, meter header, and related equipment from the regulator and pipes to which plaintiff and his crew, in their turn, were to attach the meters and fixtures of his employer. Defendant also contends that the jury's special findings 2, 3, and 5 foreclose all controversy on these points, and that finding 4 is not only inconsistent with those other findings but likewise inconsistent with the evidence which concededly showed that plaintiff was an experienced workman who was quite familiar with the dangers incident to the detaching and removing of a gas company's equipment from the basement of a business building.

Defendant made timely objection to the fourth finding and moved for judgment on the other special findings.

Without attempting a detailed analysis of the foregoing contentions, it seems more expedient in this case to turn to the brief of appellee to discover, if we may, on what basis the judgment can be sustained. Plaintiff's counsel suggest that as the work of detaching the fixtures of the Wichison company progressed the premises became dangerous and "plaintiff was not warned" of his danger, and that he "had no reason to anticipate that something was being done that would render his position some eight or ten feet away from their work unsafe."

But the evidence and the jury's special findings 2, 3, and 5 established the fact that plaintiff did know what was going on. His own work could be performed only by coördinating it in sequence to the progress of the work being made by the crew of the defendant company. Counsel for appellee invoke the rule of law that momentary forgetfulness of a known danger does not defeat an injured workman's cause of action for the negligence of others. What was this negligence of the defendant? The jury found that defendant did not take "proper precaution in securing regulator securely after disconnecting meters and headers from pipes." What duty did the defendant owe to plaintiff to take that suggested precaution? The status of plaintiff in that laundry room at the time defendant was detaching and removing its equipment was that of a licensee. Counsel for appellee do not suggest that plaintiff's presence in the basement at the time of the accident gave him any more potent status. As such licensee the only duty of defendant towards plaintiff in

the circumstances was not to willfully injure him; and while plaintiff's petition had the usual quota of denunciatory adverbs, there never was a real issue of willfulness in the record and not a shadow of evidence to that effect.

Our own reports reveal no case closely analogous to the one at bar, but some helpful precedents may be gleaned from other jurisdictions. In *Cole v. Willcutt & Sons Co.*, 214 Mass. 453, 101 N. E. 995, 218 Mass. 71, 105 N. E. 461, defendant had contracted to make extensive repairs on a building which included the reconstruction of a stairway. Another contractor had undertaken to do some plumbing work in the same building. While the stairway was being rebuilt, plaintiff, who was an employee of the plumbing contractor, fell on the stairway and was injured. He sued the defendant for damages. At the close of the second trial the trial court directed a verdict for defendant; and on appeal the supreme judicial court characterized plaintiff's status as a mere licensee of the unfinished stairway, so far as his relationship to the defendant was concerned. It said:

". . . the defendant owed to the plaintiff as a mere licensee no duty to maintain the stairs in a safe and suitable condition. It was bound only to refrain from doing him willful injury and from wantonly or recklessly exposing him to danger. . . . The risk of accident was obvious upon proper inspection, and there was no duty upon the defendant to give any warning to the plaintiff." (pp. 72-73.)

In *State Compensation Ins. Fund v. Allen*, 104 Cal. App. 400, 285 Pac. 1053, the defendant, Allen, had undertaken to erect a building. The construction of the steel work had been let to a subcontractor. One Peterson was an employee of the subcontractor. In walking on a partially dismantled runway which had been erected by the defendant for his own use, Peterson fell and sustained injuries. The action which followed was for damages in Peterson's behalf. The trial court instructed the jury, in part, thus:

" 'It is admitted in this case that Victor Peterson was an employee of J. G. Williams Construction Company, and not of defendant J. A. Allen, and that said J. A. Allen was under no contractual duty by any contract to construct, secure and support any runway for said Victor Peterson, and you must, before you can find for the plaintiff and against the defendant, find, from a preponderance of the evidence, that there was an invitation, either express or implied, extended by said J. A. Allen to said Victor Peterson to use said runway as a walkway, and if no such invitation were extended, then you are instructed that said Victor Peterson was a mere licensee at the time he is alleged to have been on said alleged runway, and said J. A. Allen owed

him no duty of seeing that said alleged runway was safe for his attempted use.' " (p. 408.)

This instruction was approved as a correct statement of the pertinent law by the court of appeals which, in part, said:

"It is, of course, true that even though the intervenor [Peterson] was a mere licensee upon the runway at the time he was injured, still the defendant would be liable for conduct which would result in willfully or intentionally inflicting the injuries. . . .

"In the present case it is not contended, and the evidence will not support the assertion, that the defendant maintained a trap at the peril of employees, or that he willfully, wantonly or knowingly built or maintained a runway to injure the intervenor or anyone else.

"The doctrine is well established that except for willful and wanton injury, the owner or one in control of property is not liable for injuries sustained by a mere licensee. . . . (Citing cases and 45 C. J. 796.)" (pp. 409-410.) See, also, 23 A. L. R. 1012; 38 A. L. R. 391.

In view of the special findings of the jury, and the complete failure of proof that the defendant gas company breached any duty it owed to plaintiff, the foreman of its competitor, the judgment has no just basis on which to stand. It must therefore be set aside and the cause remanded with instructions to enter judgment for defendant. It is so ordered.