No. 41,541

VERNON HUDDLESTON, *Appellant*, v. BERNARD H. CLARK and OLETA M. CLARK, d/b/a HUB BAR AND GRILL, a/k/a MIDWAY BAR, *Appellees.*

(349 P. 2d 888)

Opinion filed March 5, 1960.

*Robert M. Brown*, of Topeka, argued the cause, and *Reese H. Robrahn*, of Topeka, was with him on the briefs for the appellant.

*Herbert A. Marshall*, of Topeka, argued the cause, and *Allen Meyers, Philip C. Gault* and *Doral H. Hawks*, all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action for damages for personal injuries sustained by Vernon Huddleston, plaintiff (appellant), by reason of indiscriminate gunshots fired by a customer in the business establish-

ment of defendants (appellees), Bernard H. and Oleta M. Clark. The lower court sustained defendants' demurrer to plaintiff's evidence and overruled plaintiff's motion for a new trial, from which rulings plaintiff appeals.

Plaintiffs' petition, in substance, alleged that he entered defendant's Hub Bar and Grill, ordered a sandwich and coffee, seating himself at the lunch counter, where he consumed the meal and was in the act of paying for it when one Henry Donohue entered through the front door of the establishment with an automatic revolver in his possession and began spraying bullets in the general direction of the plaintiff and other customers, with the result that two of the bullets entered plaintiff's body, causing injury to him as alleged. Plaintiff further alleged that Donohue entered the establishment in an intoxicated condition and that defendants and their servants knew or should have known Donohue was a man of vile, vicious and dangerous propensities and would make good his threats to return with a gun and shoot up the place previously made by him when put out of the bar and grill earlier in the afternoon; that the defendants were negligent in not notifying law enforcement authorities of the threatening and impending danger and in not taking any action to prevent the return of Donohue and the carrying out of the mentioned threats.

Defendants' answer denied that the injuries sustained by plaintiff were in any way caused by any negligent acts or omissions on their part. They further denied that they or their agents knew or had reason to anticipate Donohue would come into their place of business and injure the plaintiff by firing a gun.

Plaintiff's evidence, giving it the most favorable inferences to which it is entitled, as against a demurrer, reveals that he was a laborer, that defendants Clark operated a place of business known as the Hub Bar and Grill, that Henry Donohue operated a watch shop located in the same block as defendants' bar and grill; that defendants had known Donohue for approximately ten years—their place of business being located only two doors from Donohue's shop —and Donohue was a frequent customer of defendants; that they knew Donohue had suffered an injury to his head, whereby part of the bone and brain was removed and a metal plate inserted, and was an eccentric individual who should not drink much and, for that reason, they had left a standing order with their employees not to serve him any beer on their premises.

The testimony further reveals that on the day in question plaintiff entered defendants' bar and grill, ordered a sandwich and coffee, and after finishing his meal and while standing near the cash register to pay for the food, he observed Donohue, whom he did not know, with an object in his hand; that Donohue let out a yell and started shooting, spraying four or five bullets indiscriminately in plaintiff's direction, one bullet striking the finger on plaintiff's left hand and one penetrating his upper left arm, causing him to suffer a fifty per cent permanent partial disability to his left arm and hand.

The evidence further disclosed that defendants accepted Donohue as a customer as long as he did not drink beer; that prior to the time plaintiff was shot and in the forenoon of the same day, Donohue entered defendants' establishment and ordered a beer, which the waitress refused to serve him. He then used foul and vulgar language toward the waitress, which he had done many times before, and told her he was "going to come back and shoot her but[t] off." Donohue had made this statement many times before. After this encounter, Donohue returned again in the afternoon and upon asking for a beer and being again refused one by the waitress, he again used vulgar language toward her, at which time she requested Ole Johnson, an employee of defendants, to put Donohue out of the establishment. Johnson escorted Donohue to the door and told him to stay out, whereupon Donohue said, "I'll get my gun and come back and shoot up the place."

Shortly thereafter, Donohue was seen in the lobby of the Norva Hotel, located in the same block, with a gun and bullets in his hands. He asked a man in the lobby to load the gun for him and then returned to defendants' establishment, entered the front door thereof and started his promiscuous shooting, injuring the plaintiff.

The waitress testified: "Q. Before this shooting took place had you ever known of Donohue to assault anybody or use any force against them there in the restaurant? A. I have never seen him do anything violent, I have heard him use bad language and talk loud, but other than that I have never seen him attack anyone. Q. He was in the habit of using bad language, wasn't he? A. Well, could be. . . . Q. But you never saw him do anything violent or attack anybody? A. No, sir, that is the first time I have ever seen him do anything as far as harming someone. Q. Did you consider him to be a dangerous man? A. Well, I was never afraid of him, if that is what you mean. Q. You thought that his talk was nothing more

than talk, didn't you? A. That is all I ever took him for. Q. You had specific instructions from Mr. and Mrs. Clark not to serve him any beer, didn't you? A. That's right." She further testified that Donohue had threatened her quite a few times and had said he was going to come back and shoot her, but she "didn't believe him because he was like a young crow, all wind."

The evidence further disclosed that, at his own place of business, Donohue had at one time pulled a gun on one of his customers and had at another time shot a customer in the foot. Inasmuch as plaintiff's case was predicated on his allegations that defendants knew or should have known Donohue was intoxicated and was a man of vile, vicious and dangerous propensities, plaintiff attempted on two occasions to show, on direct examination, Donohue's general reputation in the community. However, defendants' objection to this line of testimony was sustained on the ground that no proper foundation had been laid for its submission. Plaintiff did not further pursue this matter and made no proffer of the evidence he had attempted to elicit from the witnesses. At the conclusion of plaintiff's evidence the court sustained defendants' demurrer thereto on the ground that while Donohue was a man inclined to the use of profane language, there was no evidence defendants or their employees knew that Donohue had ever committed any act of violence or that he was a dangerous man.

Plaintiff contends the trial court erred in overruling on the mentioned issue his motion for a new trial by refusing him permission to introduce testimony as to Donohue's general reputation in the community. There is nothing in the record to disclose what plaintiff's witnesses might or might not have testified. The record does not disclose that such testimony was either proffered at the trial or produced at the hearing on the motion for a new trial.

It is a familiar rule of law that where one complains of the ruling of the lower court in excluding evidence, he must have preserved his record and have presented the excluded evidence in the manner prescribed in the code of civil procedure (G. S. 1949, 60-3004); that is, by affidavit, deposition or oral testimony, in order to inform the court of the gist of the evidence; otherwise, the trial court, or this court on appeal, cannot determine whether the testimony was admissible. (*Gillen v. Stangle*, 175 Kan. 364, 264 P. 2d 1079; *Amerine v. Amerine, Executor*, 178 Kan. 79, 283 P. 2d 469; *Bourgeois v. State*

*Highway Commission,* 179 Kan. 30, 31, 292 P. 2d 683; *Faber v. Byrle,* 171 Kan. 38, 229 P. 2d 718; *Rusch v. Phillips Petroleum Co.,* 163 Kan. 11, 180 P. 2d 270.)

Plaintiff's second contention is that the lower court erred in sustaining a demurrer to his evidence. While the owner and operator of a public tavern and grill is held to a stricter accountability for injuries to patrons than is the owner of private premises generally, the rule seems to be that such owner is not an insurer of the patrons against all accidents which may befall them on the premises, but owes them only what, under the particular circumstances, is ordinary and reasonable care. (*Klish v. Alaskan Amusement Co.,* 153 Kan. 93, 109 P. 2d 75; *Hickey v. Fox-Ozark Theatres Corp.,* 156 Kan. 137, 131 P. 2d 671; *Cale v. Johnson,* 177 Kan. 576, 280 P. 2d 588; *Little v. Butner,* 186 Kan. 75, 348 P. 2d 1022.)

We are of the opinion that the trial court correctly sustained the mentioned demurrer. At no place in the record is there any evidence that on the day in question Donohue was intoxicated or had been drinking, nor is there any evidence that defendants or their employees had any knowledge he was a man of vile, vicious and dangerous propensities. Donohue had been a regular customer of defendants for quite some time. His place of business was two doors from that of defendants. While he sometimes spoke in a loud voice and used profane language toward defendants' employees when they refused to sell him beer, he had never previously harmed anyone in defendants' place of business. It was not shown, under the evidence as presented, that when Donohue was ordered to and did leave defendants' premises earlier in the afternoon of the day in question, either defendants or their employees believed there was a reasonable probability he would return with a gun and would, almost immediately upon re-entering the establishment, commit an assault on one or more of the customers by his promiscuous shooting. From a careful examination of the entire record, we are of the opinion that the judgment of the trial court should be affirmed.

It is so ordered.