Nos. 45,297 and 45,298
(CONSOLIDATED)

GENEVA HENDRIX, *Appellant* and *Appellee,* as to *Appellant* Fortner, v. PHILLIPS PETROLEUM Co., *Appellee,* as to *Appellant* Hendrix, and MARION N. FORTNER, *Appellant,* as to *Appellee* Hendrix.

and

LESTER O. GARRETT, *Appellant* and *Appellee,* as to *Appellant* Fortner, v. PHILLIPS PETROLEUM Co., *Appellee,* as to *Appellant* Garrett, and MARION N. FORTNER, *Appellant,* as to *Appellee* Garrett.

(453 P. 2d 486)

Opinion filed April 12, 1969.

*Darrell D. Kellogg,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning, Richard C. Hite, Roger Sherwood, Richard L. Honeyman,* and *Larry A. Withers,* all of Wichita, were with him on the briefs for appellant, Marion N. Fortner.

*Gerald L. Michaud,* of Wichita, argued the cause, and *Orval L. Fisher, Russell Cranmer, M. William Syrios, Kenneth L. Ingham, Bradley Post,* and *Jim L. Lawing,* all of Wichita, were with him on the brief for Lester O. Garrett, appellant and appellee, as to appellant Marion N. Fortner.

*Gerald L. Michaud,* of Wichita, argued the cause for Geneva Hendrix, appellant and appellee, as to appellant Marion N. Fortner. *Albert Kamas, Richard A. Render, Ronald L. Nieto, Ward V. Lawrence* and *Kerry J. Granger,* all of Wichita, were on the brief for Geneva Hendrix, appellant and appellee, as to appellant Marion N. Fortner.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N. Patridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Benjamin C. Langel, Jerry G. Elliott, John E. Foulston, Stanley G. Andeel,* and *John E. Neal,* all of Wichita, were with him on the brief for appellee, Phillips Petroleum Co.; *William J. Zeman, Lloyd J. Mentor* and *Charles H. Purdy,* all of Bartlesville, Oklahoma, of counsel.

The opinion of the court was delivered by

KAUL, J.: These two consolidated cases stem from an explosion of liquified petroleum gas (hereafter referred to as L. P. gas) in the farm home of R. C. and Charlotte Dykeman on July 31, 1963. As a result of the explosion John B. Hendrix was killed, Lester O. Garrett and R. C. Dykeman suffered personal injuries, and the Dykeman home was destroyed.

John B. Hendrix, deceased, and Garrett were employees of the

Hentzen Construction Company, which specializes in the repair of fire damaged property. At the time of the explosion, Hendrix and Garrett were engaged in repairing damages to the Dykeman home caused by a previous explosion and fire. Plaintiff-appellant Geneva Hendrix is the widow and sole heir-at-law of John B. Hendrix, deceased.

Appellant-defendant Fortner (hereafter referred to as Fortner) was a distributor of L. P. gas, sold to him by defendant-appellee Phillips Petroleum Company (hereafter referred to as Phillips). Fortner was allowed to sell other brands of L. P. gas, but as a branded Phillips distributor he was required to use its product "Philgas" in ninety percent of his total sales.

Plaintiffs-appellants Garrett and Hendrix (hereafter referred to as plaintiffs or Garrett and Hendrix) commenced separate actions against Fortner, Phillips and R. C. Dykeman. During the pleading stage of the actions defendant R. C. Dykeman joined with his wife Charlotte Dykeman and filed a third party petition in each action against Fortner and Phillips, respectively. Issues were joined by the answers of Fortner and Phillips in each action and as to Dykemans as third party plaintiffs. At this juncture the two cases were consolidated by order of the trial court.

Hendrix and Garrett dismissed as to R. C. Dykeman. The Dykemans, as third party plaintiffs, dismissed as to Garrett and Hendrix and other parties which they had interpleaded, but retained their action against Fortner and Phillips.

Through the commendable cooperative efforts of all counsel, at a pretrial conference the case was reassigned and the parties realigned to proceed to trial as follows: Garrett, Hendrix and Dykemans as plaintiffs and Fortner and Phillips as defendants. At the pretrial conference the parties entered into a comprehensive stipulation as to the procedure to be followed in the trial in which the actions of Garrett and Hendrix were consolidated with that of (third party plaintiffs) Dykemans.

In this format, the cases proceeded to trial to a jury. Separate interrogatories and verdicts, as to each of the three claims, were submitted to the jury on each of the issues of liability of Fortner and Phillips to the respective plaintiffs. The issues of damages were reserved for future trial in the case of verdicts of liability. The jury found in favor of Hendrix and against Fortner but in favor of Phillips. Likewise, as to Garrett it found in favor of him and against

Fortner but in favor of Phillips. As to Dykemans the jury found in their favor and against both Fortner and Phillips.

In answering special interrogatories in the Hendrix and Garrett cases the jury found Dykemans, though no longer in the cases as defendants, guilty of contributory negligence along with Fortner in causing the death of Hendrix and injuries of Garrett. The court then submitted a further question as to the contributory negligence of Dykemans in their own case. The jury was unable to answer this subsequent question.

Motions for a new trial were filed by the various parties as to each finding of the jury adverse to them. Both Garrett and Hendrix filed motions for a new trial as to Phillips, and Hendrix filed a motion for judgment notwithstanding the verdict as to Phillips. Fortner filed a motion for judgment notwithstanding the verdicts and in the alternative a motion for a new trial as to all plaintiffs. Phillips filed a motion for an order entering final judgment in its favor against Garrett and Hendrix and for judgment against Dykemans, or in the alternative for a mistrial or new trial as to Dykemans. The trial court overruled all motions except that it sustained the motion of Phillips for a mistrial or new trial as to Dykemans. Dykemans did not appeal, and as a result the issue of liability of Phillips to third party plaintiffs Dykemans is not involved in this appeal. The court also sustained the motion of Phillips for a judgment on the verdicts of the jury as to Garrett and Hendrix.

Garrett and Hendrix have appealed from the verdicts and judgments rendered in favor of Phillips. Fortner has appealed from the verdicts and judgments in favor of Garrett and Hendrix.

The appeals have been consolidated on the stipulation of the parties that a decision in one appeal controls disposition of both the Hendrix and Garrett appeals as to Phillips and, likewise, as to the appeals of Fortner from the judgments in favor of Hendrix and Garrett.

In 1958 Dykemans commenced construction of a new house on their farm. The house was built over a preexisting basement, and a cistern was located beneath the basement. The cistern was twenty-two feet in depth and eight to ten feet in width. It was used to store water for drinking purposes. Dykemans hauled water to fill the cistern. The cistern was filled by means of a filler pipe, which opened outside the house. The pipe opening, through which water was poured or hosed to fill the cistern, was located near the back

door of the house. The pipe descended down through the ground, outside of the basement wall, then through the basement wall down through the basement floor and into the cistern.

Dykemans had purchased L. P. gas from Fortner for a period of from ten to fifteen years. The gas was used to supply a Coleman furnace and hot water heater in the house. Fortner installed the L. P. gas system at the time the house was constructed. Fortner had installed a tank and gas line on the Dykeman place prior to 1958. After Dykemans built their new house he installed a "T" at the east side of the house and ran one line into the basement, which operated the hot water heater, and another line around to the northwest side of the house, which serviced the furnace. The L. P. gas tank was owned by Dykemans.

Philgas was the trade name of the gas sold by Fortner, and was purchased by him from Phillips. Philgas was identified as propane and described as odorless in its original form. It is admittedly a dangerous commodity. For safety purposes a malodorant called mercaptan is added to the L. P. gas. The odor of mercaptan was described by various witnesses as being similar to that of rotten cabbage, rotten eggs or a dead mouse.

Early in July of 1963 Dyekmans noticed an unusual odor around the house, they described it as smelling like rotten eggs. The Dyekmans could find no cause for the odor and finally determined it might be a gas leak. Fortner was called and he came out to the Dykeman house on July 8. Fortner checked the hot water heater in the basement and found a defective part, which he replaced. Fortner testified that he pressure checked the gas line and found there was a leak. He dug down to the gas line, next to the house, where he found the leak and repaired it by replacing a short copper line.

Dykemans continued to smell the odor and, on July 13, Dykeman turned off the fuel. Mrs. Dykeman testified that Fortner came out on July 15 and it was on this occasion that Fortner dug down to the gas line and replaced the riser.

On July 21, while Dykeman was putting water through the fill pipe into the cistern, an explosion occurred, followed by a fire, which damaged the house. After this explosion Fortner replaced the entire L. P. gas line from the tank into the house.

Following the explosion and fire of July 21, the Hentzen Construction Company was engaged by Dykemans to repair the damage

to the house. The new gas line was completed on July 25. After the new gas line was completed several conversations took place concerning the safety of the premises. The substance of these conversations is disputed. Mr. Dykeman testified that on July 22 Fortner told him it was safe to relight the water heater and that there was no longer any danger of gas in the cistern, as it had already burned out.

Another conversation took place on July 25 between Mrs. Dykeman, Harold Mumma, an insurance investigator, and Fortner. Roy Thomas, brother of Mrs. Dykeman, was present during this conversation, which took place in the Dykeman kitchen. Mumma testified that he inquired of Fortner if it was safe to light the appliances and also if the cistern was safe and that Fortner replied "yes."

On July 31 Garrett and Hendrix, employees of Hentzen, were engaged in making repairs on the Dykeman house. Garrett was a painter and was painting the basement. Hendrix, a carpenter and fellow employee, asked Garrett for assistance in getting down into the cistern in order to repair a crack in the cistern wall. Hendrix was lowered into the cistern by means of a chain hoist with the assistance of Garrett.

Garrett's testimony is narrated as follows:

". . . I helped him down in there and he got on his ladder and he had his little drill motor or jackhammer, or whatever it was, already anchored there and he was going to rim that crack out inside the cistern. As he picked it up to, I presume he pulled the trigger to go to work at it, that's when the explosion, the fire happened. I do recall he picked it up and placed it like he was going to work. I don't know if he could hear it or not. This was the last time I saw Mr. Hendrix alive.

"After this all I can recall was a swirl of fire down in the cistern then I blacked out. I didn't hear the explosion. I didn't know there was gas in the cistern and nobody had told me there was."

The explosion of July 31 was much more severe than that of July 21 and the following fire entirely destroyed the Dykeman house. Witnesses for both plaintiffs and defendants agreed that both explosions were caused by L. P. gas in the cistern.

We shall first consider Fortner's appeal from the judgments rendered against him in favor of Hendrix and Garrett. At the outset, it may be said that the issues raised by Fortner's appeal as to Hendrix and Garrett are identical in each case.

The Hendrix and Garrett cases were submitted to the jury by the

trial court on the theory that the duty owed by Fortner was one of ordinary care. Fortner claims that his duty was only to refrain from willfully injuring employees Garrett and Hendrix.

Fortner further claims, in the alternative, that if the duty owed by him was that of ordinary care then the instructions given did not properly state the law in that regard.

We shall first examine the basic question of the duty of care required of Fortner as to the injured Garrett and deceased Hendrix. The degree of duty of care between these parties depends largely upon the legal relationship between them at the time of the explosion.

Fortner was on the premises to repair the L. P. gas line at the request of Dykemans. Hendrix and Garrett, as employees of Hentzen, were on the premises also at the request of Dykemans to repair damages sustained in the first explosion and fire.

We believe that under the facts and circumstances, shown by the record, that Fortner and Hentzen, as independent contractors employed by Dykeman to perform services for his benefit and for their financial gain, were on Dykeman's premises as his business invitees. (65 C. J. S., Negligence, § 63 [113], p. 871.)

This court has on a number of occasions dealt with the troublesome problem of defining and distinguishing the terms trespassers, licensees and invitees, as used in the law of negligence.

In *Bessette v. Ernsting*, 155 Kan. 540, 127 P. 2d 438, we defined the terms licensee and business visitor and held:

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission.

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." (Syl. ¶¶ 1, 2.)

The subject was most recently discussed in *Graham v. Loper Electric Co.*, 192 Kan. 558, 389 P. 2d 750. In *Graham* we recognized that although the question whether a person is on property as a licensee or invitee depends on the facts and circumstances of each particular case, there are, however, some established principles which serve as a guide. In *Graham* we quoted with approval definitions of and distinctions between the terms trespasser, licensee and invitee, as used in negligence law, as set out in 65 C. J. S., Negligence, § 63 (26) (*a*), pp. 680-682, § 63 (41), pp. 715-717, and § 63 (43) (*b*), pp. 722-725. Applying those principles in *Graham* we held:

"Where there is a mutual interest or a relationship inuring to the benefit of both the injured party and the occupier of premises, an invitation is implied and the injured party is considered a business visitor or invitee." (Syl. ¶ 2.)

Applying what has been said to the facts in the instant cases we have no difficulty in determining that Fortner and Hentzen were on the property of Dykemans as their business invitees.

Fortner further claims, however, that even though a person may be on the premises of an owner in the status of an invitee, as to the owner, the same person may well be in a different status as to other persons upon the same premises. He claims that even though he and Hentzen were invitees, as to Dykeman, they were in the lesser status of mere licensees as to each other, since there was no mutual benefit flowing between them and thus each only owed a duty to refrain from willful injury to the other.

The mutual benefit (sometimes called economic benefit) test has been resorted to in determining whether one coming on the land of another does so as a licensee or invitee of the landowner. (See cases collected in 95 A. L. R. 2d, Anno. p. 992, § 4, p. 1009.) Where the status of the parties is established as invitees of the possessor or occupier of land, as in this case, this court has not applied the test in determining the duty of care owed by one invitee to another.

Fortner relies heavily on the case of *Toomey v. Wichison Industrial Gas Co.*, 144 Kan. 534, 61 P. 2d 891. *Toomey* involved the presence of two competing natural gas distributing companies on the owner's property for the purposes of disconnecting its gas line by one company and the installation of its line by the other. When an employee of one gas company was injured by the alleged negligence of the other, it was held the duty owed was only that of refraining from willful injury. *Toomey* fails to support Fortner's position here, because the duty between invitees was not involved. The decision was based on the premise that the plaintiff's company was on the property only as a licensee. It was stated in the opinion:

". . . The status of plaintiff in that laundry room at the time defendant was detaching and removing its equipment was that of a licensee. Counsel for appellee do not suggest that plaintiff's presence in the basement at the time of the accident gave him any more potent status. As such licensee the only duty of defendant towards plaintiff in the circumstances was not to willfully injure him; . . ." (pp. 538, 539.)

Since the status of invitee was not urged or considered in *Toomey*, the decision only determined the duty owed to a licensee.

Fortner cites the case of *Birt v. Drillers Gas Co.*, 177 Kan. 299,

279 P. 2d 280. Here again the case turns on the proposition that the injured plaintiff was a mere licensee, rather than an invitee as to defendant Gas Company. In *Birt* defendant owned a right-of-way in the owner's property, rather than being on the premises as an invitee of the owner. Plaintiff, a customer of the landowner's grocery store, departed from the usually traveled entrance to the store, and fell into a hole on defendant Gas Company's right-of-way. The hole was made by defendant in connection with repair work on its gas line. While the jury found plaintiff guilty of contributory negligence, it was noted in the opinion that though plaintiff may have been a business invitee, as to the landowner, she was at most a mere licensee as to the Gas Company. The existence of a licensee relationship on the facts in *Birt* is no authority for the establishment of a licensee relationship between Fortner and Hentzen on the facts in this case.

Fortner argues that our holding in *Graham v. Loper Electric Co.,* supra, requires a mutuality of benefit between two business invitees of the owner in order to create a duty of ordinary care between the invitees. We are unable to find in the *Graham* opinion the meaning urged by Fortner.

In *Graham* plaintiff's husband was an employee of an electric company engaged in construction work as a business invitee on the owner's premises, he was injured and died as a result of negligence on the part of Loper Electric Co., also engaged in the construction work as a business invitee of the landowner. We held plaintiff's husband was entitled to the exercise of ordinary care on the part of Loper, rejecting the argument of Loper that under the *Toomey* decision deceased was a licensee and as such was only entitled to the exercise of duty to refrain from willful injury on the part of Loper. In the *Graham* opinion it was noted that the particular work being done was to the mutual benefit of the owner Loper Electric Company and K. G. & E., employer of deceased. The point noted, however, was only incidental and did not control the decision as it was stated in the opinion:

"The liability of the appellant therefore hinges on the determination of whether or not Graham, an employee of K. G. & E., was on the premises as a business invitee." (p. 562.)

The rule controlling the duty of care between invitees is bluntly stated in 65 C. J. S., Negligence, § 63(45):

"*Duty as between invitees.* Invitees owe each other the duty of ordinary care." (p. 734.)

Two decisions of the Tenth Circuit Court of Appeals, dealing with cases arising in Oklahoma are cited in support of the rule as stated.

In *Peak Drilling Co. v. Halliburton Oil Well Cement Co.,* 215 F. 2d 368 (10th Cir. 1954), it was stated:

"Where oil company employed independent contractor to drill oil well and employed another corporation to perform a hook-wall test, independent contractor and corporation employed to run test each owed to the other the duty to exercise ordinary care." (Headnote ¶ 4.)

In *E. L. Farmer & Company v. Hooks,* 239 F. 2d 547 (10th Cir. 1956), cert. den. 353 U. S. 911, 1 L. Ed. 2d 665, 77 S. Ct. 669, the accident involved occurred in Texas. The court noted, that in Texas the general rule is that a licensor assumes no duty toward a licensee except to refrain from causing him injury by active negligence or willful conduct, and stated:

". . . But here both appellant and appellee were on the premises as invitees of Kerr-McGee. Appellee was not there pursuant to direction, consent, or other permissive grant of appellant. There was no relationship of licensor and licensee between them in respect to the occupancy of the premises. And there was nothing in the relationship between them which operated to narrow or limit any extent the duty resting upon appellant to exercise reasonable care under the circumstances for the safety of appellee while they were on the premises of their common employer in connection with the discharge of their respective duties. . . ." (p. 551.)

Here the evidence discloses that Fortner was on the Dykeman premises in connection with his L. P. gas installation several times in the interim between the first and second explosions. He was well aware of the presence of workmen engaged in the repair of damages caused by the first explosion and fire. An applicable statement is found in 65 C. J. S., Negligence, § 63(113):

". . . As between two independent contractors who work on the same premises, either at the same time or one following the other, each owes to the employees of the other the same duty of exercising ordinary care as they owe to the public generally. . . ." (p. 873.)

As an alternative position taken in his appeal, Fortner asserts that if he did owe a duty of ordinary care the instructions given by the trial court fell short of an adequate statement of the rules of law regarding his duty of care. His complaint, in essence, appears

to be that he was entitled to a more specific definition of his duties and that the refusal of the trial court to submit his requested instructions in this regard amounted to reversible error.

In the instructions given the trial court reviewed the various acts of negligence on the part of Fortner, claimed by Garrett and Hendrix, and summarized the contentions of both defendants. The court instructed as to intervening cause, concurrent causes and proximate cause, about which there is no complaint. In Instruction No. 11 the court defined negligence in terms of ordinary care. In Instruction No. 13 negligence as lack of ordinary care was applied to Fortner. It reads:

"Negligence is the lack of ordinary care under the existing circumstances. As applied to defendant Fortner, it means the failure to do something that a reasonably careful distributor engaged in the same business would do or the doing of something by a distributor that a reasonably careful distributor engaged in the same business would not do. The degree of care must be equal to the foreseeable danger reasonably to be anticipated measured by all of the facts and circumstances."

Essentially, Fortner's defenses were (1) the explosion was not caused by willful conduct and (2) he had no duty to warn Garrett and Hendrix. The first was removed as an issue in the case when the trial court ruled the duty owed was that of ordinary care. As to his second defense, Fortner appears to take the position that his only duty was to warn Dykemans of the possibility of gas in the cistern; that this duty was discharged either by his warning to Dykemans or that Dykemans already had knowledge from Deputy State Fire Marshal Hickman of the danger which absolved Fortner. As to this point, as we have noted, the evidence was in sharp conflict. The general and special verdicts of the jury must be construed as resolving the conflicting testimony in favor of Garrett and Hendrix.

The liability for negligence of a distributor of liquid gas is stated in 26 Am. Jur. 2d, Electricity, Gas, and Steam, § 246, as follows:

"However, although a distributor of liquid gas is not ordinarily charged with the duty of inspecting or maintaining privately owned pipes or appliances in the buildings or on the property of its customers, if it undertakes to inspect pipes and installations on the property of the customer or to service or repair leaks or defects therein, it will be liable for its negligence in so doing. . . ." (p. 455.)

See, also, 38 C. J. S., Gas § 42(d), pp. 735, 738; Vol. 2 Restatement of Torts (2nd), §§ 388, 389, pp. 300, 311; *Miller v. Wichita Gas Co.,*

139 Kan. 729, 33 P. 2d 130; *Carlisle v. Union Public Ser. Co.*, 137 Kan. 636, 21 P. 2d 395, and *Atkinson v. Wichita Gas Co.*, 136 Kan. 854, 18 P. 2d 127.

Instructions are to be considered as a whole and in their entirety and each instruction is to be considered with all other instructions in the case. (*Thompson v. Norman*, 198 Kan. 436, 424 P. 2d 593, and *Schroeder v. Richardson*, 196 Kan. 363, 411 P. 2d 670.)

Instruction No. 11, in essence, charged Fortner with the standard of care required of a reasonably careful distributor. Other instructions relating to causation, negligence in general and setting out contentions of the parties considered with No. 11, fully and fairly covered the law of the case and the theories and contentions of the parties in the Garrett and Hendrix cases.

We turn next to the appeals of Garrett and Hendrix from the verdicts and judgments in favor of Phillips.

Plaintiffs first contend that by virtue of the jury's answers to special interrogatories 3 and 4 in the Dykeman case they are entitled to judgment against Phillips or in the alternative they should be granted a new trial.

In the Dykeman case the jury rendered a general verdict in favor of Dykemans against both Fortner and Phillips. As to special interrogatories in the Dykeman case the journal entry recites as follows:

"In the case of plaintiffs, R. C. Dykeman and Charlotte Dykeman:

"1. Do you find the defendant, Marion Fortner, guilty of any act or acts of negligence which were a proximate cause of plaintiffs, Dykemans, injuries and damages?

"Answer: Yes.

"2. If your answer to the above question is yes, state the specific act or acts of negligence.

"Answer: We feel Mr. Fortner was negligent because he did not notify Phillips of the first explosion and because of his lack of knowledge.

"3. Do you find the defendant, Phillips Petroleum Company, guilty of any act or acts of negligence which were a proximate cause of the Dykemans injuries and loss?

"Answer: Yes.

"4. If your answer to the above question is yes, state the specific act or acts of negligence.

"Answer: We do not feel that they gave proper instruction and training in accordance with Number 16 of the Court Instructions for a distributor of LP gas.

"After discussion between court, counsel and the jury, a further special question was submitted by the court as follows:

"Do you find the Dykemans guilty of negligence which contributed to their own injury and damage?

"As revealed by the record this question was never answered. The objections, court's ruling and proceedings concerning this special question appear in the record made at the time."

Plaintiffs claim that the findings of negligence on the part of Phillips as to Dykemans in interrogatories 3 and 4 are inconsistent with the findings of no negligence on the part of Phillips in interrogatory 3 in each of their cases. Plaintiffs argue the findings should be reconciled with each other and with the general verdicts if possible, but if not, either a new trial should be granted or judgment entered on the special findings.

The principles proposed by plaintiffs are sound but the applicability thereof to the question here is not at issue. The present posture of the Dykeman case is as though it had never been tried. It is a nullity with respect to any inconsistency between findings therein and those made in plaintiffs' cases.

The record discloses that the further special question was submitted in the Dykeman case because of the jury's answers in plaintiffs' cases indicating contributory negligence on the part of Dykemans. The jury was unable to agree on an answer and was discharged. The trial court sustained a motion of Phillips for a new trial or mistrial. The order was not appealed from.

A mistrial is a nugatory trial and is equivalent to no trial. (*Vilander v. Hawkinson,* 183 Kan. 214, 326 P. 2d 273; 39 Am. Jur., New Trial, § 2, pp. 33, 34; 58 C. J. S., Mistrial, pp. 833, 834.)

Plaintiffs next claim the trial court erred in failing to rule as a matter of law that under the evidence Phillips was negligent in its failure to adequately train Fortner. They argue that under Fortner's own testimony Phillips had failed to inform him as to the propensities of L. P. gas, in particular that malodorant would be filtered out by soil in case of underground leak and that he should have been informed as to gas scopes and their use. Plaintiffs assert that Phillips was negligent as a matter of law in failing to give Fortner training or instructions in these matters.

Under the evidence in this case the question framed was one of fact for determination by the jury under proper instructions.

Fortner's testimony discloses that he had been in the L. P. gas business for many years, having joined his father in the business in 1947. He knew that L. P. gas is heavier than air; that it would seek

out low pockets in the ground. He did not know that malodorant in L. P. gas would be filtered out by the ground but he testified he did know there was a disagreement between experts on the subject. Although he stated in a pretrial deposition that he had never heard of a gas scope, he testified at the trial that he did know of it and that he told Dykemans to have the fire marshal bring his scope out to their farm. He also testified that he received pamphlets or letters all the time from Phillips; he was familiar with Kansas rules and regulations for the L. P. gas industry and had in his possession the National L. P. gas laws and regulations. Fortner admitted that he had been instructed to inform Phillips of any explosion of fire but that he had failed to inform Phillips of the first Dykeman explosion.

Fortner further testified that Phillips had nothing to do with his activities in the sale of appliances and installation and repair of fixtures and gas lines. He testified:

". . . Besides delivering gas we sold tanks and furnaces and hot water heaters and installed them. We laid lines. Phillips had nothing to· do with that part of our work. We didn't buy from them, and I started with Phillips in 1954. . . ."

In Instruction No. 16 the court instructed the jury as to the duty of Phillips with respect to Fortner. It reads as follows:

"You are instructed that defendant Phillips had a duty to instruct Fortner or ascertain that he had been instructed as to the proceedings to be followed in the event of a leak in an L. P. gas system or explosion.

"In this connection it is not required that Fortner be educated or instructed as an expert in the field. Phillips has the duty to instruct or ascertain that Fortner has been instructed to the extent that he have such knowledge as is reasonable under the circumstances to give him information sufficient to take appropriate action and give appropriate advice to his customer. The violation of such duty is negligence.

"Phillips, once having fulfilled the above duty, cannot be held liable for Fortner's failure to take advantage of, use or impart to others such instruction."

Phillips objected to the instruction as placing too great a responsibility upon it. We believe the instruction fairly states the duty imposed under the facts and circumstances of this case. A manufacturer of L. P. gas is under a duty to instruct a distributor or to ascertain that he has been instructed in the use and handling of its commodities. (26 Am. Jur. 2d., Electricity, Gas and Steam, § 244, p. 453; *Hulke v. International Mfg. Co.*, 14 Ill. App. 2d 5, 142 N. E. 2d 717.)

Plaintiffs claim the trial court erred in ruling as a matter of law

that there was no issue of fact as to malodorization of the L. P. gas. Plaintiffs concede the evidence clearly showed that the gas in the Dykeman tank was malodorized. They appear to claim that, although everyone smelled the gas at the tank, some witnesses did not smell gas in the basement and, therefore, the gas must have lost its odor, thus creating an issue for the jury. We are unable to follow plaintiffs' reasoning in this regard. All parties agree that malodorant is absorbed by the passing of gas through the ground. Plaintiffs' expert, Dr. Fred Kurata, testified that the malodorant might have been filtered out by soil but he did not describe any way to malodorize the gas so that it could not be filtered out in case of an underground leak.

Eldon Means, a consulting chemist, testified as an expert for both plaintiffs and defendants. He agreed with Dr. Kurata that mercaptan used as a gas malodorant would be filtered out of the gas when exposed to soil. Means did propose a theory that in the case of a prolonged exposure, a point of equilibrium or saturation of the soil would be reached, following which the malodorant would remain with the gas as it proceeded in its course of escape. Neither Means nor Kurata, nor any other witness, suggested any malodorization which would resist filtering out by soil exposure. Nor was any more efficient system of malodorization suggested. Since malodorant in the first instance is conceded, the filtering process was not disputed and no better means of malodorization indicated by any of the witnesses, there was no issue of fact framed by the evidence in this connection; and the trial court correctly removed the question from the jury. Failure to do an act which is physically impossible is not negligence. (*Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359.)

The issue of odorization of L. P. gas was removed from the case by a directed verdict of the trial court and affirmed on appeal in *Scalzo v. Marsh,* 13 Wis.(2d) 126, 108 N. W. 2d 163, where it was stated:

". . . Not only did the evidence establish that each of the 13 tank cars of Skelgas, from one of which the gas that caused the explosion had been drawn, had been odorized with the proper amount of such chemical, but the expert witness, Statz, who tested the gas remaining in such two cylinders after the explosion, testified that such gas had been properly odorized. Any testimony of a casual observer, to the effect he did not smell gas just prior to the explosion, is not sufficient to raise a jury issue as to the odorization of the gas where the same has been verified conclusively as a scientific fact by proper expert testimony." (p. 150.)

There is no issue framed as to malodorization by the evidence in this record.

Plaintiffs next assert the trial court erred in ruling as a matter of law that Fortner was not the agent of Phillips. In their limited argument on this point plaintiffs appear to contend, in essence, that agency must be inferred from Fortner's position as a distributor of Phillips products.

As a branded distributor Fortner was entitled to, and did use, Phillips' trademarks and decals on his uniform and equipment. Phillips made no arrangements to supply a distributor with decals, stationery or bills. It was left up to the distributor to purchase these items from manufacturers and printers. Phillips did have a cooperative advertising agreement with Fortner to the extent that Phillips reimbursed Fortner one-half the cost of advertising, not exceeding a limited amount, when Fortner advertised Phillips' products. Under the provisions of his distributor's contract, Fortner was required to check gas for malodorant on delivery from Phillips. He was instructed to report any explosion or fire.

The evidence is undisputed that Phillips had nothing to do with any repair or installation work, if such were undertaken by a distributor. In this jurisdiction the controlling test in determining the existence of agency, so that the doctrine of respondeat superior would be applicable, is the right to control the purported servant. Application of the rule to facts quite similar to those here is found in *Greiving v. LaPlante,* 156 Kan. 196, 131 P. 2d 898. Greiving leased a Phillips gasoline filling station and sold Phillips products. In considering an assertion of agency we stated:

". . . the mere fact of ownership of property or that goods marketed under the trade name of such owner are advertised and sold there is insufficient to show that the one who sells the goods is the agent or employee of such owner. (2 C. J. S. 1030; 32 Am. Jur. 537; *Tice v. Crowder,* 119 Kan. 494, 240 Pac. 964; *Stilwell v. Faith,* 142 Kan. 730, 732, 52 P. 2d 635.) The trial court erred in overruling the Phillips Petroleum Company's demurrer to the evidence." (p. 198.)

The determination of what constitutes agency, and whether there is any competent evidence reasonably tending to prove its existence, is a question of law. (*Shugar v. Antrim,* 177 Kan. 70, 276 P. 2d 372, and *Greep v. Bruns,* 160 Kan. 48, 159 P. 2d 803.)

There is no showing in the evidence that Phillips reserved the right to control the physical manner in which work was done by

Fortner. The undisputed evidence is that Phillips had nothing to do with installation or repair work, such as Fortner was engaged in at the Dykeman place. Nor does the evidence here establish liability on the part of Phillips on the theory of an attempt to contract away a nondelegable duty. Application of this rule was considered in *Reilly v. Highman,* 185 Kan. 537, 345 P. 2d 652, where we said:

". . . Stated another way, intrinsic danger in an undertaking is one which inheres in the performance of the contract and results directly from the work to be done—not from the collateral negligence of the contractor. . . ." (p. 541.)

In view of what has been said we hold the evidence failed to frame an issue of fact with respect to the agency of Fortner, therefore, the trial court's ruling in this regard was correct.

At this juncture we direct our attention to further contentions relating to the point under consideration. Plaintiffs not only seek to impose liability on Phillips, via the agency of Fortner, but they contend in the alternative that, even though Fortner was not an agent, the work being done was so dangerous that Phillips is liable for Fortner's conduct, regardless of their relationship. They argue that Phillips had a duty to advise and instruct the ultimate consumer of the dangerous propensities of L. P. gas.

Plaintiffs rely primarily on *Hulke v. International Mfg. Co.,* supra, where Skelly Oil Company and its distributor were held liable for personal injuries suffered by Hulke resulting from an explosion of L. P. gas, manufactured and sold by Skelly under the trade name of Skelgas. Hulke, a workman on a construction job of his employer, was injured when he attempted to ignite a salamander space heater used to prevent a newly poured concrete wall from freezing. Hulke observed the space heater had "gone out" and when he attempted to relight it the explosion occurred. Fuel was supplied to the space heated by a portable "Skelgas" cylinder to be returned to Skelly within six months from the date of delivery. The explosion was caused by the lack of an automatic cutoff valve, thus permitting gas to accumulate when the flame went out.

In *Hulke* the negligence of the distributor, for which Skelly was held liable, involved the installation of a cylinder of "Skelgas" owned by Skelly to a heater that did not have an automatic shutoff device. The negligence was directly related to the distributor's function as a "Skelgas" distributor.

The negligent conduct in the instant case occurred in Fortner's

independent undertaking to repair the Dykeman gas line, a service neither directly nor indirectly required by Phillips or directly related to his function as a Philgas dealer. Under these circumstances, Phillips is not liable for the collateral negligence of Fortner. (*Reilly v. Highman*, supra.)

Unlike the process in *Hulke*, in this case Phillips sold and delivered L. P. gas in bulk to Fortner. The gas was not delivered to the customer in a Phillips container. Fortner stored the gas in his tanks and delivered it to the tanks of customers when sold. As the court instructed, it was the duty of Phillips to instruct or ascertain that Fortner had been instructed to the extent that he have reasonable knowledge under the circumstances, including the ability to give appropriate advice to customers. Since the first explosion was not reported to Phillips by Fortner the duty of Phillips on receipt of such knowledge is not a question in this appeal.

We have examined plaintiffs' requested instructions and their complaints as to the instructions given. It will suffice to say that under the facts and circumstances shown in the record, we believe the jury was fully apprised of the duty of Phillips under Instruction No. 16 read together with the other instructions of the court. Instructions to a jury are to be considered as a whole and in their entirety, and each instruction is to be considered in connection with all other instructions in the case. (*Thompson v. Norman*, supra, and *Schroeder v. Richardson*, supra.)

Plaintiffs next claim error in the trial court's refusal to allow plaintiffs to introduce evidence of practices in the LPG Industry. Plaintiffs proffered the testimony of a Mr. Cheatum for the alleged purpose of proving a standard for training programs in the industry. The proffer was not included in the record on appeal. However, a transcript thereof has been submitted on stipulation of the parties.

The record on appeal does not detail the background of plaintiffs' proffer nor does the transcript received by stipulation reflect the precise qualifications of Cheatum as an expert in this regard.

The most that can be gleaned from the transcript of Cheatum's proffered testimony is that he claimed to know that one and possibly two companies in the industry provided training programs. Cheatum had attended a training program of one company but he had never attended a class for employees in handling gas after it had escaped. On cross-examination it was shown that Cheatum's knowledge of the extent of training programs, by companies in the

industry, was very limited. The fact that there were industry standards in this regard was not established, nor did Cheatum attempt to say what those standards should have been or whether they did, or did not, include training as to employees' conduct after an explosion. Under such circumstances the trial court's rejection cannot be said to amount to reversible error. (*Huddleston v. Clark*, 186 Kan. 209, 349 P. 2d 888.)

Plaintiffs argue the trial court erred in submitting special interrogatories to the jury and especially in giving separate interrogatories as to each of their claims. It must be conceded the submission of three sets of interrogatories created a considerable undertaking for the jury. However, we are not inclined to agree with plaintiffs that the jury was confused by the interrogatories, though the language used by the jury in their answers was not as specific or accurate as it might have been, nevertheless, it indicates an understanding of the issues. The present jury was simply unable to agree as to contributory negligence on the part of Dykemans with respect to their claim.

In any event, under K. S. A. 60-249 (*b*) submission of special interrogatories is discretionary with the trial court judge, (*Thompson v. Norman*, supra) included therein is discretionary supervision of the form and nature thereof. (*Albin v. Munsell*, 189 Kan. 304, 369 P. 2d 323.)

Finding no error shown the judgments are affirmed.